The TIMKEN COMPANY,
Plaintiff–Appellee,

v.

The UNITED STATES,
Defendant–Appellant,

and

China National Machinery and Equipment Import and Export Corporation, Defendant–Appellee.

No. 89–1489.

United States Court of Appeals,
Federal Circuit.

Jan. 4, 1990.

Rehearing Denied March 12, 1990.

Terence P. Stewart, Stewart & Stewart, Washington, D.C., argued for plaintiff-appellee. With him on the brief were Eugene L. Stewart, James R. Cannon, Jr., and Jessica Wasserman. Also on the brief was Scott A. Scherff, Senior Corporate Counsel, The Timken Co., of counsel.

David M. Cohen, Director, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for defendant-appellant. With him on the brief were Stuart E. Schiffer, Acting Asst. Atty. Gen., Velta A. Melnbrencis, Asst. Director and Platte B. Moring, III. Also on the brief were Wendell L. Willkie, II, Gen. Counsel, Stephen J. Powell, Chief Counsel for Import Admin. and Craig R. Giesse, Attorney–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, of Washington, D.C.

Lawrence R. Walders, Graham & James, of Washington, D.C., represented defendant-appellee, China National Machinery & Equipment Import and Export.

Before MARKEY, Chief Judge,
RICH, Circuit Judge, and DUMBAULD,
Senior Judge *.

* Edward Dumbauld, Senior Judge, United States District Court for the Western District of Pennsylvania, sitting by designation.

RICH, Circuit Judge.

The United States Department of Commerce (Commerce) appeals from the May 26, 1989, order of the Court of International Trade (CIT)[1], Court No. 87–06–00738, granting plaintiff-appellee Timken's application for a writ of mandamus and ordering Commerce to publish notice in the *Federal Register* of the CIT's decision in *Timken Co. v. United States,* 714 F.Supp. 535 (CIT 1989). We affirm.

## BACKGROUND

In 1986, Timken filed an antidumping duty petition with Commerce, alleging that two companies were selling tapered roller bearings (TRBs) manufactured in the People's Republic of China (PRC) in the United States at less than fair value. Upon investigation, Commerce determined that only one of the companies, Premier Bearing and Equipment, Ltd., was selling TRBs at less than fair value, and so excluded the other company, defendant-appellee China National Machinery and Equipment Import and Export Corp. (CMEC), from the resulting antidumping duty order.

Timken appealed Commerce's final determination to the CIT, and sought a temporary restraining order (TRO) and a preliminary injunction to enjoin liquidation of TRBs imported by CMEC during the pendency of the appeal. The CIT denied both the TRO and the preliminary injunction. *See Timken Co. v. United States,* 11 CIT ——, 666 F.Supp. 1558 (1987). However, after hearing the merits of the appeal, the CIT found error in Commerce's determination of the dumping margin with respect to CMEC and so remanded to Commerce for a redetermination of the dumping margin. *See Timken Co. v. United States,* 699 F.Supp. 300 (CIT 1988). Upon remand, Commerce recalculated a dumping margin by CMEC of 4.69%. On March 22, 1989, the CIT affirmed Commerce's recalculation of the dumping margin in *Timken Co. v. United States,* 714 F.Supp. 535, and entered a final judgment dismissing the action.

Liquidation of entries after a final decision of the CIT or of this court is governed by 19 U.S.C. § 1516a(e) (1988), which states in the last sentence thereof that "notice of the court decision shall be published within ten days from the date of issuance of the court decision."[2] However, Commerce is of the opinion that a decision of the CIT is not final for the purposes of publication of notice until either (1) an appeal is decided by this court, or (2) the time for appeal expires. Therefore, Commerce did not publish notice of the CIT decision within 10 days of March 22, 1989.

On May 10, 1989, Timken filed an application for a writ of mandamus, seeking to compel Commerce to publish notice of the March 22, 1989 decision in the *Federal Register.*[3] On May 22, 1989, CMEC filed a timely notice of appeal to this court, ap-

---

**1.** *Timken Co. v. United States,* 715 F.Supp. 373 (CIT 1989).

**2.** The full text of § 1516a(e) is as follows:

(e) Liquidation in accordance with *final* decision

If the cause of action is sustained in whole or in part by *a decision* of the United States Court of International Trade or of the United States Court of Appeals for the Federal Circuit—

(1) entries of merchandise of the character covered by the published determination of the Secretary, the administering authority, or the Commission, which is entered, or withdrawn from warehouse, for consumption after the date of publication in the Federal Register by the Secretary or the administering authority of *a notice of the court decision,* and

(2) entries, the liquidation of which was enjoined under subsection (c)(2) of this section,

shall be liquidated in accordance with *the final court decision in the action. Such notice of the court decision* shall be published within ten days from the date of the issuance of *the court decision.* [Emphasis ours.]

**3.** The timing of publication of notice is of great importance to the parties. Under section 1516a(c), unless liquidation is enjoined by the CIT, liquidation continues under the original Commerce determination until publication of a CIT or Federal Circuit decision not in harmony with Commerce's determination. Thus, in the present case, liquidation of CMEC's entries is currently taking place without assessment of antidumping duties, but would be suspended and made subject to collection of estimated antidumping duties of 4.69% upon publication of notice of the March 22, 1989 CIT decision.

pealing the March 22, 1989 decision of the CIT. On May 26, 1989, the CIT granted Timken's application for a writ of mandamus, finding that § 1516a(e) created a clear obligation on the part of Commerce to publish the CIT decision within 10 days of issuance, or April 1, 1989, regardless of whether an appeal is taken or the time for appeal has run. *See Timken,* 715 F.Supp. 373, 378.

## OPINION

■ The parties do not dispute the requirements for issuing a writ of mandamus. In particular, there must be: (1) a clear duty on the part of the defendant to perform the act in question; (2) a clear right on the part of the plaintiff to demand the relief sought; and (3) an absence of an adequate alternative remedy. *Maier v. Orr,* 754 F.2d 973, 983 (Fed.Cir.1985); *Kerr v. United States Dist. Court for the Northern Dist. of California,* 426 U.S. 394, 402–03, 96 S.Ct. 2119, 2123–24, 48 L.Ed.2d 725 (1976). In the present case, the existence of both the right and the duty hinges on the proper interpretation of § 1516a(e) and its companion provision § 1516a(c)(1)[4], and in particular on whether these sections require publication of a CIT decision which has either been appealed or which is still appealable.

Both parties, as well as the CIT, concentrate heavily on what is meant by the word "final" in the heading and the body of § 1516a(e). The term "final decision" can mean different things in different situations. Specifically, a court decision can be "final" in the sense that a court is done with the action and has entered final judgment. This is the meaning that is used, for example, in 28 U.S.C. § 1295(a)(5) (1982), which states that this court has exclusive

jurisdiction over "an appeal from a final decision of the United States Court of International Trade." Alternatively, a court decision can be final in the sense that the court has conclusively decided the controversy and the decision can no longer be attacked, either collaterally or by appeal. This is the meaning that is used, for example, in 28 U.S.C. § 2645(c) (1982), which states that

[a] decision of the Court of International Trade is final and conclusive, unless a retrial or rehearing is granted ... or an appeal is taken to the Court of Appeals for the Federal Circuit....

Perhaps a better term for this second kind of final decision would be a "conclusive" decision.

Commerce maintains that the latter definition of "final" is intended in § 1516a(e), relying on the above language in 28 U.S.C. § 2645(c), various theories of statutory construction, and certain legislative history. On the other hand, Timken argues, and the CIT agreed, that the former definition is intended, also relying on theories of statutory construction and other legislative history.

■ We are of the opinion that an appealed CIT decision is not a "final court decision" within the plain meaning of § 1516a(e). Most persuasive is the fact that the term "final court decision" must be read together with the words that follow, specifically, "in the action." An "action" does not end when one court renders a decision, but continues through the appeal process. Thus, an appealed CIT decision is not the *final* court decision *in the action.* In this context, the word "final" is used as it is used in 28 U.S.C. § 2645(c), i.e., to mean "conclusive." Thus,

---

**4.** 19 U.S.C. § 1516a(c)(1) reads as follows:

(1) Liquidation in accordance with determination

Unless such liquidation is enjoined by the court under paragraph (2) of this subsection, entries of merchandise of the character covered by a determination of the Secretary, the administering authority, or the Commission contested under subsection (a) of this section shall be liquidated in accordance with the determination of the Secretary, the administering authority, or

the Commission, if they are entered, or withdrawn from warehouse, for consumption on or before the date of publication in the Federal Register by the Secretary of the administering authority of *a notice of a decision* of the United States Court of International Trade, or of the United States Court of Appeals for the Federal Circuit, not in harmony with that determination. *Such notice of a decision* shall be published within ten days from the date of the issuance of *the court decision.* [Emphasis ours.]

§ 1516a(e) does not require liquidation in accordance with an appealed CIT decision, since that section requires that liquidation take place in accordance with the final court decision in the action.[5]

■ However, this conclusion is not dispositive of the present appeal, since the issue before us is not how liquidation should take place, but when notice of an adverse decision of this court or the CIT must be published. The word "final" is used only in two places in § 1516a(e), whereas in the remainder of both § 1516a(c)(1) and (e), the words "decision" or "court decision" are used by themselves. "It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word" in a statute. *United States v. Lexington Mill & Elevator Co.*, 232 U.S. 399, 410, 34 S.Ct. 337, 340, 58 L.Ed. 658 (1914); *United States v. Menasche*, 348 U.S. 528, 538, 75 S.Ct. 513, 519, 99 L.Ed. 615 (1955). It follows that if a word is used in one phrase but omitted in another, the two phrases are intended to mean something different. We are of the opinion that Congress intentionally used the word "final" only once in § 1516a(e) to convey one meaning, but omitted the word elsewhere in that section and in § 1516a(c)(1) to convey another meaning.

In particular, the terms "decision" and "court decision" are used in § 1516a(c)(1) and (e) to denote a decision which is final as far as the rendering court is concerned, even though that decision may be subject to appeal. In support of this interpretation, we merely point to the last sentence of § 1516a(c)(1), which states: "Such notice of a decision shall be published within ten days from the date of the issuance of the court decision." It is nonsensical to say that a court decision *issues* only when the time for appeal expires; a decision *issues* when judgment is entered. Nor do we find it credible to say that a CIT decision does not exist until the time for appeal expires; such an interpretation is contrary to both the common meaning of the term and its use in statutes such as 28 U.S.C. § 1295(a)(5) and 28 U.S.C. § 2645.[6]

Our interpretation is also supported by the legislative history. Unless the agency is required to publish notice of a CIT decision not in harmony within 10 days of the issuance of the decision (regardless of the time for appeal or of whether an appeal is taken), § 1516a(c)(1) would require that the agency's determination continue to govern entries even after the CIT's decision. However, the House Committee report, in discussing § 1516a, states that the agency's determination will govern only that merchandise which is "entered prior to the *first decision of a court* which is adverse" to that determination. H.R.Rep. No. 317, 96th Cong., 1st Sess. 182 (1979) (emphasis added). In this case, the CIT has rendered the "first decision of a court" which is adverse to the agency's determination. Thus, publication is required to terminate liquidation in accordance with the agency's determination.[7]

---

5. Because the issue is not before us in this appeal, we need not decide whether a decision of this court is "final" within the meaning of § 1516a(e) before the time for application for certiorari to the Supreme Court expires.

6. We do, however, agree that a decision must be "final" in the sense that the CIT has entered final judgment in order to require publication of notice under § 1516a(c)(1) and (e). This is the strict holding of *Melamine Chemicals, Inc. v. United States*, 732 F.2d 924 (Fed.Cir.1984) (discussed at length, *infra*).

7. As evidence of the contrary interpretation, the government points to the relevant Senate report, which states that "in the usual case, liquidation would proceed in accordance with the decision under challenge while litigation is proceeding."

S.Rep. No. 249, 96th Cong., 1st Sess. 248 (1979), U.S.Code Cong. & Admin.News 1979, pp. 381, 634. However, this passage must be read in context together with the next sentence, which reads:

> If *the court* issues a decision which is contrary to the challenged determination decision, then the administering authority is to publish notice of the adverse decision in the Federal Register within 10 days and all entries which occur on or after the date of publication are to be liquidated in accordance with *the court's* decision. [Emphasis ours.]

*Id.* Read together, the two sentences are ambiguous, primarily because the report refers to only a single reviewing "court", when in fact, agency determinations are reviewable by both the CIT and this court. Thus, assuming that the

Thirdly, our interpretation of § 1516a(c)(1) is not, as urged by the government, contrary to this court's decision in *Melamine Chemicals, Inc. v. United States,* 732 F.2d 924 (Fed.Cir.1984). In *Melamine,* as in this case, Commerce found no dumping by the foreign importer, but the CIT disagreed and remanded the case to Commerce for a new determination. The CIT also ordered recision of Commerce's negative determination. However, unlike this case, the CIT never entered final judgment. The appeal to this court in *Melamine* was taken directly from the recision and remand order of the CIT. The domestic manufacturer, Melamine Chemicals, Inc., urged on appeal that the agency be required to publish notice of the CIT decision so that liquidation could proceed in accordance with that decision. This court disagreed, holding that the CIT's decision was not final within the meaning of § 1516a. *See Melamine,* 732 F.2d at 934.

The holding in *Melamine* is completely consistent with our interpretation of § 1516a(c)(1) and (e) in the present case. The decision of the CIT in *Melamine* was not "final" under any interpretation of that term. The CIT never entered final judgment; it simply entered an interlocutory order rescinding the agency's determination and remanding for a new determination. Therefore, there is no question that publication was not required in *Melamine.*

However, Commerce argues that certain broad language in *Melamine* is in conflict with the present opinion. In particular, *Melamine,* 732 F.2d at 934, states:

> Absent an injunction, 19 U.S.C. § 1516a requires that the challenged determination shall govern the liquidation of entries "while the litigation is proceeding." *See* S.Rep. No. 96–249, 96th Cong., 1st Sess. 248 (1979).... The litigation is proceeding on appeal and there has been no final court decision on the validity of the challenged determination.

First, we note that the Senate report cited in support of the above language is ambig-

uous in its meaning, see note 7, *supra.* Secondly, the issue in *Melamine* was not what constitutes a "final court decision" in all cases, but whether the particular decision before the court was final. In view of the fact that the CIT decision reviewed in *Melamine* was not "final" no matter what definition of that word is considered, the language quoted above (except for the last 15 words) was not necessary to the decision, and consequently not binding on this court.

Finally, we look to what effect our interpretation has on the statutory scheme. If the CIT (or this court) renders a decision which is not in harmony with Commerce's determination, then Commerce must publish notice of the decision within ten days of *issuance* (i.e., entry of judgment), regardless of the time for appeal or of whether an appeal is taken. Under § 1516a(c)(1), the effect of the publication is to indicate that liquidation should no longer take place in accordance with Commerce's determination. Further, § 1516a(e) indicates that if the CIT (or this court) issues such an adverse final decision, then all entries after publication of notice of that adverse decision will be liquidated in accordance with the *final,* i.e. *conclusive,* court decision in the action. However, since there is no way to know what the *conclusive* decision will be at the time notice of the CIT decision is published, it is necessary to suspend liquidation until there is a *conclusive* decision in the action.

Only this scheme is consistent with the following excerpt from the legislative history:

> Generally, there is a presumption of correctness regarding the administrative level determination. Therefore, present law requires that merchandise be liquidated in accordance with the administrative decision if entered prior to the first decision of a court which is adverse to that decision. This presumption is continued under the bill ...

---

report is only referring to review by a single court, i.e., the CIT (at the time, the Customs Court), the phrase "while litigation is proceed-

ing" is limited to the duration of proceedings before the CIT.

H.R.Rep. No. 317, 96th Cong., 1st Sess. 182 (1979). The scheme is logical; since Commerce's determination is presumed correct, Commerce should liquidate in accordance with that determination while the presumption exists. However, if the CIT or this court renders a decision which is contrary to that determination, the presumption of correctness disappears. Thereafter, Commerce should suspend liquidation until there is a *conclusive* court decision which decides the matter, so that subsequent entries can be liquidated in accordance with that conclusive decision. We also note that this scheme avoids the "yo-yo" effect which this court found potentially offensive in *Melamine. See Melamine,* 732 F.2d at 934. In particular, because an adverse CIT decision merely suspends liquidation, no "flip-flop" takes place if this court subsequently reverses the CIT.

As a final matter, the third element of a mandamus action, the lack of an adequate alternative remedy, was met in this case. Commerce suggests that as an alternative remedy, Timken could have sought an injunction pursuant to 19 U.S.C. § 1516a(c)(2). We do not, however, consider such an alternative remedy to be adequate, since Timken would be required to prove that an injunction was appropriate under the circumstances. *Zenith Radio Corp. v. United States,* 710 F.2d 806 (Fed. Cir.1983). Timken should not be required to present such proof, since it already has a clear statutory right to the claimed relief.

The court below held that Commerce was obligated to publish notice of the March 22, 1989 CIT decision by April 1, 1989. We agree with this holding, and affirm.

AFFIRMED.