**HOSIDEN CORPORATION, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 91–10–00720.**

**Slip Op. 94–128.**

United States Court of International Trade.

Aug. 12, 1994.

Donovan Leisure Newton & Irvine, Peter J. Gartland, Christopher K. Tahbaz, and Fusae Nara, New York City, for plaintiff Sharp Corp.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, A. David Lafer, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Marguerite E. Trossevin, Washington, DC, of counsel, for defendant.

Collier, Shannon, Rill & Scott, Paul C. Rosenthal, Robin H. Gilbert, Washington, DC, for defendant-intervenor Advanced Display Mfrs. of America.

## MEMORANDUM

GOLDBERG, Judge:

This matter is before the court on a motion for a Writ of Mandamus to Enforce Judgment filed by Sharp Corporation ("Sharp"), one of the plaintiffs in this consolidated action. Sharp seeks a court order directing Susan G. Esserman, Assistant Secretary for Import Administration of the United States Department of Commerce ("Commerce"), to take all actions necessary to implement the final *Judgment Order* issued by this court in conjunction with its memorandum opinion dated April 14, 1994. *Hosiden Corp. v. United States*, 18 CIT ——, 852 F.Supp. 1050 (1994).

## BACKGROUND

In *Hosiden*, the court sustained a negative injury determination made upon remand by the United States International Trade Commission ("ITC" or "Commission") concerning electroluminescent ("EL") high information content flat panel displays ("displays") from

Japan. In the *Judgment Order* that accompanied the memorandum opinion, the court ordered Commerce to revoke the antidumping duty order on EL displays within ten days of the date of said *Judgment Order*.[1] Commerce had previously established a weighted average dumping margin of 7.02 percent for all imports of EL displays. *High Information Content Flat Panel Displays and Display Glass Therefor From Japan,* 56 Fed.Reg. 32,376, 32,401 (July 16, 1991).

On May 6, 1994, Commerce published a notice in the Federal Register of this court's decision to affirm the ITC's remand determination that no U.S. industry was being materially injured by reason of imports of EL displays from Japan. 59 Fed.Reg. 23,690 (May 6, 1994). Commerce, however, did not revoke the antidumping duty order on EL displays from Japan as instructed by this court's *Judgment Order.* Instead, Commerce stated that it would revoke the antidumping duty order on EL displays only "absent an appeal, or, if appealed, upon a final decision by the Court of Appeals for the Federal Circuit (CAFC) affirming the CIT." *Id.* at 23,691. Commerce's notice also stated that it would "continue to suspend liquidation at the current cash deposit rate pending the expiration of the period of appeal of [sic], if appealed, pending a final decision of the CAFC." *Id.* (citing *Timken Co. v. United States,* 8 Fed.Cir. (T) 29, 893 F.2d 337 (1990)).

Sharp's motion requests that this court order Commerce to: (1) terminate the collection of cash deposits for estimated antidumping duties on EL displays; (2) suspend liquidation of entries of EL displays; (3) refrain from imposing any further obligation on any party involved in any administrative review by Commerce relating to EL displays; and (4) execute all documents and take all necessary actions to effectuate a revocation of the antidumping duty order imposed on EL displays by the *Federal Register* notice of Sep-

tember 4, 1991, published at 56 Fed.Reg. 43,741. *Sharp's Proposed Order.*

## DISCUSSION

As an initial matter, the court always retains jurisdiction with respect to the effects of its judgments. *See, e.g., Holmes Prods. Corp. v. United States,* 17 CIT ——, ——, 822 F.Supp. 754, 756 (1993). This court is authorized to issue a writ of mandamus pursuant to 28 U.S.C. § 1651 (1988). A writ of mandamus may be issued provided the following elements are present: (1) a clear duty on the part of the defendant to perform the act in question; (2) a clear right on the part of the plaintiff to demand the relief sought; and (3) an absence of an adequate alternative remedy. *Timken Co. v. United States,* 8 Fed.Cir. (T) 29, 31, 893 F.2d 337, 339 (1990) (citation omitted). In the matter presently before the court, the existence of the duty and the right hinge upon a determination of Commerce's duties and obligations that result from the required publication of notice of a CIT decision sustaining a negative ITC injury determination issued upon court-ordered remand. In other words, to determine whether Commerce is entitled to continue collecting cash deposits of estimated antidumping duties or to continue annual administrative reviews pursuant to 19 U.S.C. § 1675(a) pending a final decision in an appeal of a CIT decision sustaining a final negative injury determination made by the ITC on remand, the court must ascertain the legal obligations that result from publication of notice of a court decision that is contrary to Commerce's original final affirmative determination (i.e. a CIT decision upholding the ITC's negative remand injury determination).

According to Commerce's own regulations, publication of an ITC final negative determination requires Commerce to terminate an antidumping investigation "without further comment or action." 19 C.F.R. § 353.20(d) (1993). Furthermore, if Commerce had pre-

---

1. *Hosiden Judgment Order* at 2. This order states, in relevant part:

   [It is] **ORDERED** that, based upon the ITC's determination on remand, the United States Department of Commerce ("Commerce") shall revoke the antidumping duty order on EL high

information content flat panel displays and display glass therefor from Japan, said order having been published at 56 Fed.Reg. 43,741, 43,742 (Sept. 4, 1991), within 10 days of the date of this Judgment.

viously ordered the suspension of liquidation, Commerce must end such suspension upon the date of publication of notice of the negative determination, and order Customs to release any cash deposit or bond.[2]

Commerce, however, argues that it has fully complied with this court's order in *Hosiden,* in light of relevant precedent established by the Court of Appeals for the Federal Circuit ("CAFC") in *Timken Co. v. United States,* 8 Fed.Cir. (T) 29, 893 F.2d 337 (1990). Commerce specifically notes that *Timken* states that "an appealed CIT decision is not the final court decision in the action." *Timken,* 8 Fed.Cir. (T) at 32, 893 F.2d at 339. Therefore, Commerce is not required by § 1516a(e) to liquidate entries in accordance with an appealed CIT decision. *Id.* Because there is no way to know what the conclusive decision will be at the time notice of the CIT decision is published, Commerce must suspend liquidation until there is a final and conclusive court decision that decides the matter. *Timken,* 8 Fed.Cir. (T) at 35, 893 F.2d at 341.[3]

Commerce acknowledges that *Timken* also declared that if the CIT issues a decision that is incompatible with Commerce's determination, then Commerce must publish notice of that decision within ten days of issuance (i.e. entry of judgment), regardless of the time for appeal or of whether an appeal is taken. *Timken,* 8 Fed.Cir. (T) at 34, 893 F.2d at 340. Commerce, however, conveniently fails to note that the CAFC further specified that "[u]nder § 1516a(c)(1), the effect of the publication [of notice of the CIT decision] is to indicate that liquidation should no longer take place in accordance with Commerce's determination." *Timken,* 8 Fed.Cir.

(T) at 34, 893 F.2d at 341. Indeed, the strict ten day rule for publication "would not have been imposed on Commerce if Congress had intended to hold in abeyance the ... decisions of [the CIT] ... during the period when an appeal remains a possibility and during the pendency of appellate review." *Timken Co. v. United States,* 13 CIT 454, 457, 715 F.Supp. 373, 376 (1989), *aff'd, Timken Co. v. United States,* 8 Fed.Cir. (T) 29, 893 F.2d 337 (1990).

▮ The CAFC in *Timken* further noted that a CIT decision that is adverse to the agency's determination eviscerates the presumption of correctness that had attached to the agency determination. *Timken,* 8 Fed. Cir. (T) at 35, 893 F.2d at 341. As the *Timken* court explained, the legislative history of the antidumping statutory scheme demonstrates that the agency's determination will govern only that merchandise which is "entered prior to the *first decision of a court* which is adverse" to that determination. *Timken,* 8 Fed.Cir. (T) at 33, 893 F.2d at 340 (quoting H.R.Rep. No. 317, 96th Cong., 1st Sess. 182 (1979)). *See also NTN Bearing Corp. of America v. United States,* 8 Fed.Cir. (T) 26, 29, 892 F.2d 1004, 1006 (1989). Furthermore, although "liquidation would proceed in accordance with the [agency] decision under challenge while litigation is proceeding," the *Timken* court specifically explained that "while litigation is proceeding" is limited to the duration of the proceedings before the CIT. *Timken,* 8 Fed.Cir. (T) at 33 n. 7, 893 F.2d at 340 n. 7 (citing S.Rep. No. 249, 96th Cong., 1st Sess. 248 (1979)). Once the CIT issues its decision and enters its final judgment, entries made subsequent to that ad-

---

**2.** 19 C.F.R. § 353.20(d) (1993) states in full:

*(d) Effect of negative final determination.* An investigation terminates, without further comment or action, upon publication in the Federal Register of [Commerce's] or the Commission's negative final determination. If [Commerce] previously ordered suspension of liquidation, [Commerce] will order the suspension ended on the date of publication of the notice of negative final determination and will instruct the Customs Service to release any cash deposit or bond.

**3.** The court notes that Sharp does not dispute that liquidation should continue to be suspended.

Sharp's proposed order, in fact, states that "pending further order of this Court or 'the final court decision in this action' within the meaning of 19 U.S.C. § 1516a(e), [Commerce] shall suspend the liquidation of entries of EL displays in accordance with this Court's Preliminary Injunction Order dated January 20, 1994." *Sharp's Proposed Order* at 2. Instead, Sharp contests Commerce's decision to continue collecting cash deposits of estimated antidumping duties on imports of EL displays from Japan, and to continue its administrative reviews pursuant to 19 U.S.C. § 1675(a).

verse CIT decision are governed by the CIT's decision, and not the agency's determination. *Smith Corona Corp. v. United States*, 8 Fed.Cir. (T) 180, 186, 915 F.2d 683, 688 (1990) (19 U.S.C. § 1516a(c)(1) clearly indicates that the decision of the CIT is of controlling effect when rendered).

▪ Commerce essentially fails to acknowledge that the *Timken* court noted that Congress intentionally used the word "final" to convey one meaning for purposes of § 1516a(e), but omitted the word in § 1516a(c)(1) to convey another meaning. *Timken*, 8 Fed.Cir. (T) at 33, 893 F.2d at 340. Pursuant to § 1516a(e), entries shall be liquidated in accordance with the final, i.e. conclusive, decision in the action, either from the CAFC, the Supreme Court, or through lapse of the allotted period for an appeal of the CIT's decision. Pursuant to § 1516a(c)(1), however, publication of notice of the first decision of a court which is not in harmony with the agency determination indicates that liquidation should no longer take place in accordance with Commerce's determination. The CIT decision must be final, i.e. the court must enter final judgment, in order to require publication and thereby displace Commerce's determination as the controlling decision in the matter. *Timken*, 8 Fed.Cir. (T) at 33 n. 6, 893 F.2d at 340 n. 6. The *Timken* court emphatically stated that it would be "nonsensical" to say that a CIT decision entering final judgment does not exist and has no effect until the time for appeal expires or the action is finally and conclusively resolved. *Timken*, 8 Fed.Cir. (T) at 33, 893 F.2d at 340. The effect of publication of notice of the CIT decision pursuant to § 1516a(c)(1) is to signal an end to the controlling effect of the agency determination, notwithstanding the unexpired period to file an appeal, or the actual pendency of appellate review. Therefore, although Commerce shall suspend liquidation, pursuant to § 1516a(e), pending the final, i.e. conclusive, court decision in the action, such suspension must be in accordance with the CIT decision and not Commerce's determination.

▪ In the instant action, the court issued a decision affirming the ITC's negative remand determination and entered a final judgment.[4] Because the CIT decision was a court decision not in harmony with Commerce's original final determination, Commerce published notice of the CIT's decision to affirm the ITC's negative injury determination within ten days of issuance. Commerce stated that it would suspend liquidation until there is a final decision in the action. Commerce, however, erred in deciding that it would continue to collect estimated antidumping duties at the current cash deposit rate pending the expiration of the period for filing an appeal or pending a final decision by the CAFC. Publication of notice triggered certain obligations on the part of Commerce. Specifically, Commerce was required to: (1) suspend liquidation; (2) discontinue the collection of estimated antidumping duties because the estimated duties was zero in light of this court's affirmance of the ITC's negative injury determination; (3) order the end of any previously ordered suspension of liquidation and instruct the Customs Service to release any cash deposit or bond; and (4) refrain from imposing any further obligation on any party in any administrative review relating to EL displays from Japan. Aside from suspending liquidation, Commerce has failed to satisfy its legal obligations.

4. The court notes that the instant action is clearly distinguishable from *NTN Bearing Corp. of America v. United States*, 8 Fed.Cir. (T) 26, 29, 892 F.2d 1004, 1006 (1989). In *NTN Bearing*, the CAFC held that entry of partial summary judgment is not a final decision such that it affects the administrative handling of entries of merchandise at issue, i.e. the collection of estimated antidumping duties.

Furthermore, the court notes that the *NTN Bearing* court specifically declined to resolve the issue of whether a final CIT decision was "final" for purposes of terminating the operation of the agency determination. *NTN Bearing*, 8 Fed.Cir. (T) at 29 n. 4, 892 F.2d at 1006 n. 4. Two weeks after *NTN Bearing* was decided, the same three-judge CAFC panel issued *Timken*. The court finds that *Timken* clearly states that a CIT decision entering final judgment adverse to an agency determination is indeed a court decision that, pursuant to § 1516a(c)(1), indicates that the liquidation and administrative handling of entries will no longer continue in accordance with Commerce's determination.

**120**

## CONCLUSION

An agency determination or practice cannot stand undisturbed in the aftermath of an adverse court decision. Commerce is without authority to disregard its obligations resulting from a final CIT decision that establishes the illegality of proceeding in accordance with its original determination, notwithstanding Commerce's displeasure with that court decision or Commerce's skepticism as to the likelihood that the CIT's decision will be affirmed by the CAFC. The court notes that although the factual circumstances of *Timken* are converse to those presently before the court, the principles of *Timken* still apply. In *Timken,* an initial negative antidumping determination was reversed by this court and remanded to the agency; the agency's subsequent affirmative determination on remand was then sustained by this court.[5] In the present action, an initial affirmative antidumping duty determination was reversed and remanded to the agency; the agency's subsequent negative remand determination was then sustained by this court.[6] Contrary to its assertion, Commerce has failed to fully comply with this court's order in *Hosiden* because of its incomplete reading of *Timken.* Commerce correctly notes that *Timken* not only requires Commerce to publish notice of the CIT decision within ten days of issuance, but also requires Commerce to suspend liquidation until there is a final and conclusive court decision in the action. Commerce, however, fails to recognize the effect of publication of notice of an adverse CIT decision. *Timken* clearly states that the publication of notice of a CIT decision adverse to Commerce's determination signals the end of liquidation in accordance with Commerce's determination; instead, as of

the date of publication, entries are to be made in accordance with this court's decision. Furthermore, Commerce's regulations unequivocally require Commerce to terminate its investigation "without further comment or action" upon publication in the Federal Register of notice of the ITC's negative final determination. 19 C.F.R. § 353.20(d) (1993). Commerce has failed to comply with this court's April 14, 1994 *Judgment Order,* as well as its own regulations. For the foregoing reasons, the court grants plaintiff Sharp's Motion for a Writ of Mandamus to Enforce Judgment.

## ORDER

Upon reading the *Motion for a Writ of Mandamus to Enforce Judgment* filed by plaintiff Sharp Corporation ("Sharp"), defendant's opposition thereto, and the opposition filed by defendant-intervenor Advanced Display Manufacturers of America ("ADMA"); upon consideration of all other papers and proceedings had herein, and upon due deliberation, it is hereby

**ORDERED** that Sharp's *Motion for a Writ of Mandamus to Enforce Judgment* is GRANTED; it is further

**ORDERED** that, pending further order of this court, or "the final court decision in this action" within the meaning of Section 516A of the Tariff Act of 1930, 19 U.S.C. § 1516a(e) (1988), Susan G. Esserman, or such person acting in the capacity of Assistant Secretary for Import Administration of the United States Department of Commerce, shall immediately take such action necessary to permit electroluminescent high information content flat panel displays and display glass therefor from Japan ("EL displays") to be

5. In *Timken,* Commerce excluded a defendant-intervenor from the scope of its original final affirmative antidumping determination. *Timken,* 13 CIT at 455, 715 F.Supp. at 374. The CIT found error with certain aspects of Commerce's scope determination and remanded to Commerce. Upon remand, Commerce recalculated its dumping margins consistent with the court's instructions and established a 4.69 percent dumping margin for the previously excluded defendant-intervenor. The CIT affirmed Commerce's remand determination and entered final judgment dismissing the action.

6. In the instant action, the ITC made an affirmative injury determination and Commerce established a dumping margin of 7.02 percent for EL displays from Japan. On review, this court found error with certain aspects of the ITC determination and remanded to the ITC. Upon remand, the ITC determined that imports of EL displays from Japan had not caused material injury to the domestic industry. This court affirmed the ITC's negative remand injury determination, and entered final judgment dismissing the action.

imported without cash deposits for estimated antidumping duties; it is further

ORDERED that, pending further order of this court, or "the final court decision in this action" within the meaning of Section 516A of the Tariff Act of 1930, 19 U.S.C. § 1516a(e) (1988), Susan G. Esserman, or such person acting in the capacity of Assistant Secretary for Import Administration of the United States Department of Commerce, shall order the end of any previously ordered suspension of liquidation of EL displays and instruct the Customs Service to release any cash deposit or bond; it is further

ORDERED that, pending further order of this court, or "the final court decision in this action" within the meaning of Section 516A of the Tariff Act of 1930, 19 U.S.C. § 1516a(e) (1988), Susan G. Esserman, or such person acting in the capacity of Assistant Secretary for Import Administration of the United States Department of Commerce, shall suspend the liquidation of entries of EL displays in accordance with this court's Preliminary Injunction Order dated January 20, 1994; it is further

ORDERED that, pending further order of this court, or "the final court decision in this action" within the meaning of Section 516A of the Tariff Act of 1930, 19 U.S.C. § 1516a(e) (1988), Susan G. Esserman, or such person acting in the capacity of Assistant Secretary for Import Administration of the United States Department of Commerce, shall refrain from imposing any further obligation on any party in any review by the Department of Commerce under Section 751 of the Tariff Act of 1930, 19 U.S.C. § 1675 (1988), relating to EL displays; and it is further

ORDERED that, pending further order of this court, or "the final court decision in this action" within the meaning of Section 516A of the Tariff Act of 1930, 19 U.S.C. § 1516a(e) (1988), Susan G. Esserman, or such person acting in the capacity of Assistant Secretary for Import Administration of the United States Department of Commerce, shall execute all documents and take all necessary actions to effectuate the revocation of the antidumping duty order imposed on EL displays by the *Federal Register* notice of Sep-

tember 4, 1991, published at 56 Fed.Reg. 43,741.