# United States Court of Appeals for the Federal Circuit

---

**DIAMOND SAWBLADES MANUFACTURERS COALITION,**

*Plaintiff-Appellee,*

**v.**

**UNITED STATES,**

*Defendant-Appellant,*

**and**

**SAINT-GOBAIN ABRASIVES, INC.,**

*Defendant-Appellant,*

**and**

**HEBEI JIKAI INDUSTRIAL GROUP CO., LTD., and HUSQVARNA CONSTRUCTION PRODUCTS NORTH AMERICA, INC.,**

*Defendants-Appellants,*

**and**

**EHWA DIAMOND INDUSTRIAL CO., LTD.,**

*Defendant-Appellant,*

**and**

**BOSUN TOOLS GROUP CO., LTD.,**

*Defendant-Appellant.*

---

2010-1024, -1090

---

Appeals from the United States Court of International Trade in case no. 09-CV-0110, Senior Judge R. Kenton Musgrave.

---

Decided:  December 9, 2010

---

DANIEL B. PICKARD, Wiley Rein LLP, of Washington, DC, argued for plaintiff-appellee.  With him on the brief was MAUREEN E. THORSON.

DELISA M. SANCHEZ, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant United States.  With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and FRANKLIN E. WHITE, JR., Assistant Director.

KENNETH GEORGE WEIGEL, Alston & Bird, LLP, of Washington, DC, argued  for defendants-appellants Hebei Jikai Industrial Group Co., Ltd, et al.  With him on the brief for Hebei Jikai Industrial Group Co, Ltd, and Husqvarna Construction Products North America, Inc. was ELIZABETH M. HEIN.

LYNN M. FISCHER FOX, Fischer Fox Global PLLC, of Washington, DC, for defendant-appellant Saint-Gobain Abrasives, Inc.

J. DAVID PARK,  Akin, Gump Strauss Hauer & Feld LLP, of Washington, DC, for defendant-appellant Ehwa Diamond Industrial Co., Ltd.  Of counsel were JARROD M. GOLDFEDER, SPENCER S. GRIFFITH and LISA W. ROSS.

GREGORY S. MENEGAZ, Dekieffer & Horgan, of Washington, DC, for defendant-appellant Bosun Tools Group Co., Ltd. Of counsel was JAMES KEVIN HORGAN.

_____

Before LOURIE, BRYSON, and DYK, *Circuit Judges*.

BRYSON, *Circuit Judge*.

In this antidumping case, the Court of International Trade issued a writ of mandamus to the Department of Commerce directing Commerce to issue antidumping duty orders and require the collection of cash deposits on certain merchandise imported from China and Korea. Commerce and several importers appealed, arguing that Commerce had no duty to issue such orders prior to the termination of all judicial proceedings challenging the underlying determination of the International Trade Commission. We affirm the order of the Court of International Trade.

I

An antidumping duty investigation begins when an interested party files a petition with Commerce and the International Trade Commission seeking the imposition of antidumping duties on designated imports. 19 U.S.C. § 1673a(b). Based on the petition and other available information, the Commission first determines whether there is a reasonable indication that a domestic industry is materially injured or threatened with material injury by the subject imports. *Id.* § 1673b(a)(1). If the Commission makes an affirmative preliminary determination, it waits for Commerce to determine whether the subject merchandise is, or is likely to be, sold at less than fair

value in the United States ("the LTFV determination"). *Id.* § 1673b(b)(1)(A).

If Commerce makes an affirmative final LTFV determination, the Commission then makes a final injury determination. 19 U.S.C. § 1673d(b)(1). The Commission is required to notify the parties and Commerce of its determination and to publish notice of that determination in the Federal Register. *Id.* § 1673d(d). If the Commission's final determination of material injury or threat of material injury is affirmative, Commerce is required, within seven days after being notified by the Commission of the determination, to publish an antidumping duty order and begin collecting cash deposits for duties due under the order. *See id.* § 1673e(a) (obligation to publish antidumping duty order after notification); *id.* § 1673e(a)(3) (obligation to collect deposit of estimated antidumping duties pending liquidation of entries of subject goods).

## II

Diamond Sawblades Manufacturers Coalition ("DSMC") represents domestic manufacturers of diamond sawblades. In 2005, DSMC petitioned Commerce to impose antidumping duty orders on certain diamond sawblades imported from China and Korea. Commerce and the International Trade Commission initiated antidumping investigations in response to the petition. The Commission made a preliminary determination that there was a reasonable likelihood that an industry in the United States was materially injured or threatened with material injury. *Diamond Sawblades and Parts Thereof from China and Korea*, 70 Fed. Reg. 43,903 (Int'l Trade Comm'n July 29, 2005). Commerce then made preliminary and final determinations that the subject imports were being sold at less than fair value in this country.

*Diamond Sawblades and Parts Thereof From the People's Republic of China*, 70 Fed. Reg. 77,121 (Dep't of Commerce Dec. 29, 2005) (preliminary determination); *Diamond Sawblades and Parts Thereof From the Republic of Korea*, 70 Fed. Reg. 77,135 (Dep't of Commerce Dec. 29, 2005) (preliminary determination); *Diamond Sawblades and Parts Thereof From the People's Republic of China*, 71 Fed. Reg. 29,303 (Dep't of Commerce May 22, 2006) (final determination), *amended by* 71 Fed. Reg. 35,864 (Dep't of Commerce June 22, 2006); *Diamond Sawblades and Parts Thereof From the Republic of Korea*, 71 Fed. Reg. 29,310 (Dep't of Commerce May 22, 2006) (final determination). The International Trade Commission subsequently published its final "material injury" determination. In that determination, the Commission found that the diamond sawblades industry in the United States was not materially injured or threatened with material injury by imports of diamond sawblades from China and Korea. *Diamond Sawblades and Parts Thereof From China and Korea*, Inv. Nos. 731-1092 & 1093, USITC Pub. 3862 (July 2006), notice published at 71 Fed. Reg. 39,128 (Int'l Trade Comm'n July 11, 2006). The administrative antidumping proceedings therefore came to an end.

DSMC filed a complaint in the Court of International Trade challenging both the Commission's final negative injury determination and Commerce's LTFV determinations. The court stayed the claim pertaining to Commerce pending the disposition of the claim pertaining to the Commission. On the merits, the court then ruled that the Commission had not provided an adequate explanation or substantial evidentiary support for its negative injury determinations. *Diamond Sawblades Mfrs. Coal. v. United States*, slip op. No. 2008-18 (Ct. Int'l Trade Feb. 6, 2008). The court therefore remanded the case to the Commission for further proceedings. On remand, the

Commission in May 2008 entered a new final determination, which partially reversed its earlier final determination. *Diamond Sawblades and Parts Thereof from China and Korea*, Inv. Nos. 731-TA-1092 & 1093, USITC Pub. 4007 (May 2008) (Final) (Remand). The Commission again found that the domestic diamond sawblades industry was not materially injured by the dumping of the subject imports, but this time it found that the subject imports threatened material injury to the domestic diamond sawblades industry. The Court of International Trade sustained that determination. *Diamond Sawblades Mfrs. Coal. v. United States*, slip op. No. 2009-05 (Ct. Int'l Trade Jan. 13, 2009).

Shortly after the court issued its order, the Commission notified Commerce by letter that the court had upheld its final affirmative injury determination. In response, Commerce ordered that liquidation of the subject imports be suspended pending the final resolution of the antidumping dispute. DSMC then requested that, in addition to suspending liquidation of the subject imports, Commerce issue antidumping duty orders and begin collecting cash deposits in connection with the ongoing imports of the subject goods. Commerce, however, declined to issue antidumping duty orders at that time or to begin collecting cash deposits in connection with the ongoing imports. Instead, Commerce took the position that under the governing statutes it was not required to issue antidumping duty orders or to collect cash deposits until the final conclusion of the litigation challenging the predicates for entering antidumping orders, i.e., until Commerce received notice from the Commission that no appeal would be taken to this court or, if an appeal was taken, until this court issued a "conclusive decision" upholding the decision of the Court of International Trade.

DSMC then petitioned the Court of International Trade for a writ of mandamus directing Commerce to publish antidumping duty orders and immediately begin collecting cash deposits of the antidumping duties for imported merchandise falling within the scope of the antidumping duty orders. Over Commerce's objection, the court granted the writ. Commerce then took this appeal, joined by the importers of the subject goods. While this appeal was pending and before oral argument in this case, this court affirmed the decision of the Court of International Trade in the underlying appeal from that court's decision upholding the Commission's affirmative threat of injury determination. *Diamond Sawblades Mfrs. Coal. v. United States*, 612 F.3d 1348 (Fed. Cir. 2010).

## III

This case presents a highly technical issue of statutory construction that is of some significance to the administration of the antidumping laws. The issue involves an interpretation of several related statutory provisions governing administrative antidumping proceedings before Commerce and the International Trade Commission, and judicial review of those proceedings by the Court of International Trade and this court. The precise question before us is whether, in a case in which the Court of International Trade has remanded a negative injury determination to the Commission, and the Commission on remand has made an affirmative injury determination and notified Commerce of that determination, Commerce must issue antidumping duty orders and begin collecting cash deposits of the antidumping duties while a challenge to the material injury determination is still pending before the courts. The appellants argue not only that Commerce is not required to issue the antidumping duty orders and collect cash deposits during the pendency of that challenge, but that it does not have the authority to

do so. The appellees argue, consistently with the holding of the Court of International Trade, not only that Commerce may issue antidumping duty orders and collect cash deposits during the pendency of that challenge, but that it is required to do so absent a stay from the court. We agree with the Court of International Trade and the appellees.

By statute, the Commission is required to notify Commerce when it makes an affirmative final injury determination. 19 U.S.C. § 1673d(d). That was done in this case. After the Commission made its affirmative "threat of material injury" determination on remand from the February 6, 2008, order of the Court of International Trade, it notified Commerce of that determination by letter. The Commission, however, delayed that notification until January 22, 2009, after the Court of International Trade upheld the Commission's remand determination.[1]

After receiving the requisite statutory notification, Commerce was required to publish appropriate antidumping duty orders within seven days of being notified by the Commission of its affirmative determination. 19 U.S.C. § 1673e(a). The duty to collect cash deposits in the amount of the antidumping duties accompanies the duty to publish antidumping duty orders. *Id.* § 1673e(a)(3). Interpreting the statutory requirements according to their terms, the Court of International Trade concluded that

---

[1]   The Commission waited until after the Court of International Trade sustained its remand determination, even though the governing statute, 19 U.S.C. § 1673d(d), requires that notification of a determination be made "[w]henever the . . . Commission makes a determination" under section 1673d; the statute does not require or contemplate that the notification will issue only after court review of the Commission's remand determination.

Commerce had a clear statutory duty to publish anti-dumping duty orders and begin collecting cash deposits at that time.

The appellants contend that those statutes do not apply in the manner described above. Quite the opposite, they argue, the statutes do not allow Commerce to issue antidumping duties or collect cash deposits in a case such as this one until the challenge to the Commission's injury determination has completed its course through the courts. The appellants' arguments, however, disregard the plain statutory text and, contrary to their contentions, are not supported by prior decisions of this court.

The appellants acknowledge that in the usual case Commerce is required to issue antidumping duty orders and begin collecting cash deposits from the affected importers promptly after being notified by the Commission of its affirmative final injury determination. *See, e.g.*, *Ad Hoc Shrimp Trade Action Comm. v. United States*, 515 F.3d 1372, 1376-78 (Fed. Cir. 2008). Thus, when the Commission makes an affirmative final determination of material injury or threat of material injury at the conclusion of its investigation, the Commission notifies Commerce of its affirmative determination and publishes notice of its determination in the Federal Register. 19 U.S.C. § 1673d(d). Commerce then has the duty, within seven days after being given such notice by the Commission, to publish an antidumping order. *Id.* § 1673e(a). That duty arises as soon as the Commission notifies Commerce of its determination, regardless of whether one of the parties institutes judicial review proceedings to challenge the Commission's material injury determination or Commerce's LTFV finding.[2]

---

[2]    In its opening brief, the government emphatically, but mistakenly, asserted that section 1673e(a) "clearly

While agreeing with the above description of the statutory scheme as applied in the normal case, the appellants argue that the statutory scheme applies differently when the Commission's affirmative determination is issued following a remand from the Court of International Trade. In that situation, the appellants contend, the statutory scheme does not require Commerce to issue antidumping duty orders following notification of the affirmative determination by the Commission.

The government makes several arguments as to why section 1673e(a) did not require Commerce to issue antidumping duty orders when the Commission issued a final determination following the remand in this case. First, addressing the facts of this case, the government argues that the January 22, 2009, letter from the Commission to Commerce did not provide the statutorily required notification because the letter did not "state that the remand determination constitutes a section 1673d(b) 'final determination' of affirmative injury." That contention is frivolous. In the January 22, 2009, letter, the Commission stated that it had "issued affirmative determinations on remand" from the earlier decision of the Court of International Trade. It is unclear what the government believes was missing from that recitation that kept it from being a sufficient notification to satisfy section 1673e(a). In the letter, the Commission referred to its affirmative deter-

_____

and unambiguously provides that Commerce's duty to publish antidumping orders is triggered by the ITC's publication of a notice." After the appellees pointed out that the government's characterization of section 1673e(a) was incorrect, and that the duty to issue antidumping duty orders is triggered by notification, not publication, the government in its reply brief withdrew from its position that publication is the step required under section 1673e(a) to trigger Commerce's duty to issue antidumping duty orders.

mination, and in its citation to that determination, it used the term "final." The Commission also included a copy of its May 2008 remand determination, which was designated "final." We assume the government is not contending that the omission of a citation to section 1673d(b) prevented the January 22, 2009, letter from serving as the requisite notification for purposes of section 1673e(a); any such contention would be fatuous.

The government's second argument is that a different statute, 19 U.S.C. § 1516a, in effect renders inoperative the obligation that would otherwise be imposed by section 1673e(a). The problem with that argument is that the portions of section 1516a on which the government relies deal with liquidation of entries and the suspension of liquidation during judicial review proceedings. Those provisions do not address the issues in this case, which relate to the issuance of antidumping duty orders and the collection of cash deposits.

Section 1516a governs judicial review of a final determination by Commerce or the Commission in an antidumping case. 19 U.S.C. § 1516a(a)(1). Subsection (c) of section 1516a provides that unless liquidation is enjoined by the court, entries of merchandise covered by an antidumping duty order will be liquidated in accordance with the order if they are entered on or before the publication of notice of a decision of the Court of International Trade or this court that is "not in harmony" with some aspect of the antidumping duty order. *Id.* § 1516a(c)(1). Subsection (e) of section 1516a provides that if a final determination is challenged and the Court of International Trade or this court sustains the challenge in whole or in part, the entries of subject merchandise, including entries as to which liquidation was previously suspended, "shall be liquidated in accordance with the final court decision in the action." *Id.* § 1516a(e).

The liquidation of entries is normally irrevocable. *See Cambridge Lee Indus. v. United States*, 916 F.2d 1578, 1579 (Fed. Cir. 1990). The provisions of section 1516a regarding the suspension of liquidation are thus designed to ensure that the rights of the parties are not irrevocably compromised before the judicial review process has been completed and the rights of the respective parties are settled. However, subsections 1516a(c) and (e) do not apply to the issuance of antidumping duty orders or the collection of cash deposits, neither of which has the irrevocable consequences of liquidation. *See Decca Hospitality Furnishings, LLC v. United States*, 427 F. Supp. 2d 1249, 1264 (Ct. Int'l Trade 2006) (subsections 1516a(c)(1) and (e) "speak[] only to the *liquidation* of entries; they do not speak to the handling of cash deposits during court proceedings or as a result thereof"). Thus, when cash deposits are collected pursuant to an antidumping duty order with respect to which liquidation has been suspended, the deposits are subject to return with interest if the antidumping duty order is invalidated or altered in the importer's favor.[3] *See* 19 U.S.C. § 1673f(b).

In seeking to bring this case within the ambit of section 1516a, the appellants rely on our decision in *Timken*

---

[3] Because the antidumping duty order can simply be altered or revoked and the cash deposits returned if the judicial challenge is successful in whole or in part, the issuance of an antidumping duty order and the collection of cash deposits do not present the risks associated with a constantly changing set of rules applicable to subject imports, as asserted by the appellants. The suspension of liquidation thus avoids the "yo-yo effect on liquidations" that could result absent suspension during the review process. *Melamine Chems., Inc. v. United States*, 732 F.2d 924, 934 (Fed. Cir. 1984). As noted, while liquidation normally cannot be undone, the collection of cash deposits has no irreparable consequences.

*Co. v. United States*, 893 F.2d 337 (Fed. Cir. 1990), but that case does not help them. The judicial review provisions analyzed in *Timken*, 19 U.S.C. § 1516a(c) and (e), dealt only with liquidation; they did not address the issuance of antidumping duty orders, and nothing in the *Timken* decision purported to apply those provisions to the issuance of such orders. Our holding today that Commerce is required to publish antidumping duty orders upon notice of a final affirmative injury determination by the Commission is not affected by, and does not disturb *Timken*.

In *Timken*, we held that section 1516a(c)(1) requires that, within ten days of any court decision that is "not in harmony with" a final LTFV determination, Commerce must publish a notice of that decision. 893 F.2d at 341. We held that the effect of that notice, now known as a *Timken* notice, is to suspend liquidation of the subject entries until there is a final and conclusive court decision in the action, i.e., until judicial review proceedings of the antidumping duty order have been completed. *See* 19 U.S.C. § 1516a(e).

The government asserts that "it was clear error for the Trade Court to conclude that Commerce's publication of the *Timken* notice required Commerce to publish antidumping duty orders and collect cash deposits in accordance with a decision of the Trade Court that is pending appeal and is neither final nor conclusive." That argument conflates the statutory obligation to publish notice of a court decision that is "not in harmony" with the agency's decision under review, 19 U.S.C. § 1516a(c)—an obligation that results in suspension of liquidation—with the separate statutory obligation of the Commission to advise Commerce of its final material injury determination, *id.* § 1673d(d)—an obligation that compels Commerce to issue antidumping duty orders and collect cash

deposits, *id.* §§ 1673e(a), 1673e(a)(3). The two notice obligations are entirely distinct. Section 1516a(c) applies when a court issues a decision that is contrary to the pertinent agency's prior determination. Sections 1673d(d) and 1673e(a) apply when the Commission issues a material injury determination, regardless of whether that determination is made in the first instance or on remand, and regardless of whether there is any subsequent judicial review of that determination.[4]

To be sure, as we have noted, the Commission in this case issued its notification to Commerce at the time of the court decision upholding its remand determination, rather than at the time of the remand determination itself. In that respect, the Commission appears to have erroneously assumed that its obligation to issue a notice under section 1673d(d) was triggered by the court decision upholding its remand determination, rather than by the issuance of the remand determination itself. Nonetheless, the Commission's notice, even if late, still constituted a valid notification of the Commission's final determination on remand for purposes of section 1673d(d), and it therefore triggered Commerce's obligation to issue an antidumping duty

---

[4] The appellants seize on a statement by the Court of International Trade that in the context of judicial review, Commerce's publication of a *Timken* notice under section 1516a(c)(1) "effectively stands in the place of 1673d(d) notice publication." Without endorsing that statement, we believe the point the court was making was simply that, as it said earlier in the same passage, publication of notice of the court's decision "serves to give notice of the affirmative remand determination that it sustained." The court's statement does not alter the requirement in section 1673d(d) that the Commission give notice to Commerce of its final determination, triggering Commerce's duty to publish antidumping duty orders and collect cash deposits under section 1673e(a).

order under section 1673e(a). Nothing in *Timken* or any other decision of this court is to the contrary.

The appellants contend that *Hosiden v. United States*, 85 F.3d 589 (Fed. Cir. 1996), supports their position, but it does not. In that case, this court addressed the question whether, after the Court of International Trade held an antidumping duty order improper, section 1516a required the suspension of liquidation to end prior to the expiration of any appeals from that order. This court held that under section 1516a(e), resumption of liquidation was not appropriate until after "the final court decision in the action," i.e., when all appeals had been exhausted and the decision in the case became final. *Id.* at 591. The court did not address the issuance of antidumping orders or the collection of cash deposits.

The government's argument that Commerce was not required to issue antidumping orders and begin collecting cash deposits "in the absence of a final and conclusive court decision affirming an affirmative injury determination by the ITC" is unsupported by statute or case law. The government's reliance on a footnote in *Co-Steel Raritan, Inc. v. International Trade Commission*, 357 F.3d 1294, 1302 n.3 (Fed. Cir. 2004), is misplaced, as that footnote simply explains that an appeal to this court prevents the decision of the Court of International Trade from becoming "final and conclusive" for purposes of 28 U.S.C. § 2645(c). It does not suggest that the fact that the court's decision is not final for purposes of section 2645(c) (or "final and conclusive" for purposes of section 1516a(e)) affects the Commission's duty to notify Commerce of its final remand determination or Commerce's duty to issue antidumping duty orders following receipt of that notification. If accepted, the government's position would be inconsistent with Commerce's routine practice of issuing antidumping duty orders and beginning to collect cash

deposits following initial material injury determinations, even when those determinations are appealed to the Court of International Trade. Neither section 1516a nor section 1673d requires different procedures for the issuance of antidumping duty orders and the collection of cash deposits depending on whether the Commission's final material injury determination is an initial determination or one made on remand.[5]

Finally, to the extent the appellants argue that the Commission's affirmative determination on remand was not a "final determination," that conclusion is plainly wrong. The statute refers to a "final determination" by the Commission as a determination that sets forth the Commission's ultimate conclusion as to whether an industry in the United States is materially injured or threatened with material injury, or whether the establishment of an industry in the United States is materially retarded by reason of the imports of the subject goods. 19 U.S.C. § 1673d(b)(1). That determination is considered "final," even though by statute it is subject to judicial review. *See id.* § 1516a(a)(2)(B). The Commission's remand determination in this case was a "final determination," just as was its previous determination in the same case, and when notice of that determination was given to Commerce, that notice triggered Commerce's duty to issue

---

[5]  Although section 1673d does not explicitly discuss the possibility of remand, the Commission's remand final determination must be made under that section. Otherwise, Commerce would have no grounds for imposing antidumping duties in accordance with the Commission's remand determination, even at the conclusion of all judicial review proceedings. *See* 19 U.S.C. § 1673e(b) (authorizing imposition of antidumping duties following the Commission's "final determination under section 1673d(b)").

antidumping duty orders and begin collecting cash deposits on the subject entries.[6]

### IV

The Court of International Trade did not abuse its discretion in ordering Commerce to publish antidumping duty orders upon receipt of notice from the International Trade Commission of a final affirmative injury determination. Congress addressed the uncertainty in duty rates arising from remand proceedings by providing for the suspension of liquidation. It did not extend the same treatment to the issuance of antidumping duty orders and the collection of cash deposits. To the contrary, the statutory scheme imposes a mandatory duty on Commerce to issue antidumping duty orders covering the subject entries upon being notified of the Commission's final determination, a notification that in this case occurred on January 22, 2009. In light of Commerce's breach of its clear statutory duty to issue antidumping duty orders and begin collecting cash deposits, a breach not remediable in any other manner, the Court of International Trade properly issued a writ of mandamus to compel Commerce to comply with its obligations under the statute.

**AFFIRMED**

---

[6] We have no occasion in this case to address whether the Commission could respond to a remand from the Court of International Trade in a manner that would not fall within section 1673d(b) and thus not trigger its obligations under section 1673d(d).