# United States Court of Appeals for the Federal Circuit

2009-1234, -1235

NUCOR CORP. and STEEL DYNAMICS, INC.,

Plaintiffs-Appellants,

and

THYSSENKRUPP STEEL AG, THYSSENKRUPP STEEL N.A., INC., SALZGITTER AG STAHL UND TECHNOLOGIE, and AK STEEL CORP.,

Plaintiffs,

and

UNITED STATES STEEL CORP.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

and

JFE STEEL CORPORATION, KOBE STEEL LTD., NIPPON STEEL CORPORATION, NISSHIN STEEL CO., LTD., and SUMITOMO METAL INDUSTRIES, LTD.,

Defendants-Appellees,

and

BLUESCOPE STEEL AMERICAS LLC and BLUESCOPE STEEL LIMITED,

Defendants,

and

ARCELORMITTAL USA, INC.,

Defendant,

and

ARCELORMITTAL DOFASCO, INC.,

Defendant-Appellee.

Daniel B. Pickard, Wiley Rein LLP, of Washington, DC, argued for plaintiffs-appellants Nucor Corporation and Steel Dynamics, Inc. With him on the brief were Alan H. Price, and Robert E. DeFrancesco, III.

Stephen P. Vaughn, Skadden, Arps, Slate, Meagher & Flom LLP, of Washington, DC, argued for plaintiff-appellant United States Steel Corporation. With him on the brief were Robert E. Lighthizer, James C. Hecht and Stephen J. Narkin.

David B. Fishberg, Attorney, United States International Trade Commission, of Washington, DC, argued for defendant-appellee United States. With him on the brief were James M. Lyons, General Counsel, and Neal J. Reynolds, Assistant General Counsel for Litigation.

J. Christopher Wood, Gibson, Dunn & Crutcher LLP, of Washington, DC, argued for defendants-appellees JFE Steel Corporation, et al. With him on the brief were Daniel J. Plaine, Gracia M. Berg, Indraneel Sur, and Kristie A. Bluett. Of counsel were Donald Harrison and Dave M. Wharwood.

Mark S. McConnell, Hogan & Hartson LLP, of Washington, DC, for amicus curiae Chrysler Group LLC, et al. With him on the brief were Lewis E. Leibowitz, Jonathan T. Stoel, and Brian S. Janovitz.

Appealed from: United States Court of International Trade

Judge Gregory W. Carman

# United States Court of Appeals for the Federal Circuit

2009-1234, -1235

NUCOR CORP. and STEEL DYNAMICS, INC.,

Plaintiffs-Appellants,

and

THYSSENKRUPP STEEL AG, THYSSENKRUPP STEEL N.A., INC.,
SALZGITTER AG STAHL UND TECHNOLOGIE, and AK STEEL CORP.,

Plaintiffs,

and

UNITED STATES STEEL CORP.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

and

JFE STEEL CORPORATION, KOBE STEEL LTD., NIPPON STEEL CORPORATION,
NISSHIN STEEL CO., LTD., and SUMITOMO METAL INDUSTRIES, LTD.,

Defendants-Appellees,

and

BLUESCOPE STEEL AMERICAS LLC and BLUESCOPE STEEL LIMITED,

Defendants,

and

ARCELORMITTAL USA, INC.,

Defendant,

and

ARCELORMITTAL DOFASCO, INC.,

Defendant-Appellee.

Appeals from the United States Court of International Trade in consolidated case no. 07-00071, Judge Gregory W. Carman.

_____

DECIDED:  April 7, 2010

_____

Before MAYER, RADER, <u>Circuit Judges</u>, and WILKEN, <u>District Judge</u>.[*]

RADER, <u>Circuit Judge</u>.

The United States Court of International Trade affirmed the International Trade Commission's ("ITC") second sunset review determination concerning antidumping and countervailing duty orders on corrosion-resistant ("CoRe") carbon steel products from Australia, Canada, France, Germany, Japan, and Korea.  <u>Nucor Corp. v. United States</u>, 594 F. Supp. 2d 1320 (Ct. Int'l Trade 2008).  Because the ITC has discretion to consider the likely differing conditions of competition among the subject imports in deciding whether to cumulatively assess their volume and effect under 19 U.S.C. § 1675a(a)(7), this court <u>affirms</u>.

I.

The Department of Commerce ("Commerce") and the ITC must review antidumping and countervailing duty orders every five years.  19 U.S.C. § 1675(c)(1).

_____

[*]    The Honorable Claudia Wilken, District Judge, United States District Court for the Northern District of California, sitting by designation.

These reviews are known as "sunset reviews." In a sunset review, the ITC "shall determine whether revocation of an order . . . would be likely to lead to continuation or recurrence of material injury within a reasonably foreseeable time." 19 U.S.C. § 1675a(a)(1). The ITC "shall consider the likely volume, price effect, and impact of imports of the subject merchandise on the [domestic] industry if the order is revoked . . . ." Id. The ITC has discretion to cumulatively assess the subject imports if certain conditions are met:

> [T]he Commission may cumulatively assess the volume and effect of imports of the subject merchandise from all countries with respect to which reviews under section 1675(b) or (c) of this title were initiated on the same day, if such imports would be likely to compete with each other and with domestic like products in the United States market. The Commission shall not cumulatively assess the volume and effects of imports of the subject merchandise in a case in which it determines that such imports are likely to have no discernible adverse impact on the domestic industry.

19 U.S.C. § 1675a(a)(7). Even if the subject imports meet the statutory elements of cumulation, the ITC has discretion not to cumulate them in a sunset review. Id.

II.

In 1993, the ITC found that unfairly traded imports of CoRe carbon steel products from Australia, Canada, France, Germany, Japan, and Korea were causing material injury to the domestic industry. 58 Fed. Reg. 43905 (Aug. 18, 1993). Commerce issued countervailing duty orders on CoRe steel from France and Korea, and antidumping duty orders on CoRe steel from all six countries. 58 Fed. Reg. 43752-61 (Aug. 17, 1993); 58 Fed. Reg. 44159-64, 44169-71(Aug. 19, 1993).

At the first sunset review, the ITC concluded that revocation of the antidumping and countervailing duty orders would be likely to lead to continuation or recurrence of material injury. 65 Fed. Reg. 75301 (Dec. 1, 2000); Certain Carbon Steel Products from

Australia, Belgium, Brazil, Canada, Finland, France, Germany, Japan, Korea, Mexico, the Netherlands, Poland, Romania, Spain, Sweden, Taiwan and the United Kingdom, Inv. Nos. AA1921-197; 701-TA-231, 319-320, 322, 325-328, 340, 342, 348-350; 731-TA-573-TA-573-576, 578, 582-87, 604, 607-608, 612, 614-618, USITC Pub. 3364 at 47-58 (Nov. 2000) ("First Sunset Determination").  Commerce continued the antidumping and countervailing duty orders.  65 Fed. Reg. 78469 (Dec. 15, 2000).

On November 1, 2005, the ITC initiated a second sunset review.  70 Fed. Reg. 62324 (Oct. 31, 2005).  The ITC discerned a likely and reasonable overlap of competition among the subject imports and between these subject imports and domestic markets upon revocation of the orders.  Certain Carbon Steel Products from Australia, Belgium, Brazil, Canada, Finland, France, Germany, Japan, Korea, Mexico, Poland, Romania, Spain, Sweden, Taiwan and the United Kingdom, Inv. Nos. AA 1921-197; 701-TA-319, 320, 325-327, 348, 350; 731-TA-573, 574, 576, 578, 582-587, 612, 614-618, USITC Pub. 3899 at 110-11 (Jan. 2007) ("Second Sunset Determination").  The ITC also determined that the subject imports from Australia, France, Germany, Japan, and Korea likely would have discernible adverse impact on the domestic industry in the event of revocation.  Id. at 106-09.  The ITC made no similar finding for Canada.  Id.  Based on its determination, the ITC had discretion to cumulate the subject imports from Australia, France, Germany, Japan, and Korea.  See 19 U.S.C. § 1675a(a)(7).

However, the ITC chose not to cumulate the five subject imports because their likely differing conditions of competition indicated that they would compete differently in the domestic market.  Second Sunset Determination at 111-17.  The ITC compared the following conditions of competition for each country:  (1) price or volume trends; (2) the

focus on home and regional markets; and (3) transnational ownership of facilities producing the subject merchandise. Id. First, over the review period, the ITC noted that Australian, French, and Japanese imports had "dropped to very low levels" while German and Korean imports had increased. Id. at 116. Second, it explained that Australia, France, and Japan were "focused to a significant extent on markets in their respective regions, including their home markets." Id. Germany and Korea, in contrast, shipped a higher level of CoRe steel to markets outside their regional markets. Third, the ITC explained that the major French and Japanese producers were "affiliated with major U.S. producers of corrosion-resistant steel, thereby making it more likely that they would supply the U.S. market from their affiliates' U.S. production." Id. at 117. In contrast, the German and Korean industries did not have a "sufficient presence to supply the U.S. market from within the United States or elsewhere in North America." Id. at 114.

Given these differences in the conditions of competition, the ITC concluded that, unlike German and Korean industries, Australian, French, and Japanese industries "demonstrated a lack of interest in supplying the U.S. market to any significant degree" during the period of review. Id. at 116. The ITC thus regrouped the subject imports into two groups: (1) Australia, France, and Japan; and (2) Germany and Korea. Id.

The ITC decided to continue the orders on CoRe steel from Germany and Korea after determining that revocation of these orders would likely lead to continuation or recurrence of material injury to the domestic industry. Id. at 114-17. The ITC, however, revoked the orders on CoRe steel from Australia, France, and Japan because it determined that revocation of these orders would not likely cause any material injury.

Id.  The ITC also decided to revoke the orders on Canadian CoRe steel.  Id.  The Federal Register published these final determinations.  72 Fed. Reg. 4529 (Jan. 31, 2007).

Domestic and German producers of CoRe carbon steel products appealed to the Court of International Trade, challenging the ITC's second sunset review determinations and its decision to cumulate the subject imports into two groups based on the likely differing conditions of competition.  The U.S. producers were Nucor Corporation; Steel Dynamics, Inc.; U.S. Steel Corporation; and AK Steel Corporation.  The German producers were Thyssenkrupp Steel AG; Thyssenkrupp Steel N.A., Inc.; and Salzgitter AG Stahl und Technologie.  Various foreign steel producers and their U.S. affiliates intervened in the case as defendants.  On December 23, 2008, the Court of International Trade affirmed the ITC's determinations for all countries and held that the ITC's "'conditions of competition' analysis [was] not ultra vires of the cumulation statute." Nucor Corp., 594 F. Supp. 2d at 1352.

On appeal to this court, Nucor Corp., Steel Dynamics, Inc., and U.S. Steel Corp. (collectively, "Appellants") argue that the Court of International Trade erred by allowing the ITC to consider the likely differing conditions of competition as part of its cumulation analysis under 19 U.S.C. § 1675a(a)(7).  AK Steel Corporation and the German producers do not appeal the judgment.  Appellants do not challenge the ITC's cumulation analysis as applied to Canadian imports.  This court has jurisdiction under 29 U.S.C. § 1295(a)(5).

III.

Like the Court of International Trade, this court reviews the ITC's findings of fact for substantial evidence and its conclusions of law without deference. U.S. Steel Group v. United States, 96 F.3d 1352, 1356 (Fed. Cir. 1996). This court follows Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984), in reviewing an agency's statutory construction. Under Chevron, courts first consider "whether Congress has spoken to the precise question at issue." Id. at 842. "If the intent of Congress is clear, that is the end of the matter." Id. Otherwise, courts must address "whether the agency's [interpretation] is based on a permissible construction of the statute." Id. at 843. Courts "must accord substantial weight to an agency's interpretation of a statute it administers." Am. Lamb Co. v. United States, 785 F.2d 994, 1001 (Fed. Cir. 1986). "So long as the ITC's analysis does not violate any statute and is not otherwise arbitrary and capricious, the ITC may perform its duties in a way it believes most suitable." U.S. Steel v. United States, 96 F.3d 1352, 1362 (Fed. Cir. 1996).

IV.

The statutory provision at issue, 19 U.S.C. § 1675a(a)(7), does not instruct the ITC on how to exercise its discretion to cumulate the subject imports. Specifically, the statute does not address whether the ITC may factor the likely differing conditions of competition into its cumulation analysis. Therefore, this court reaches the second step in Chevron—whether the ITC's competition consideration was reasonable. This court concludes that it was.

The cumulation provision allows the ITC to cumulatively assess the subject imports if they "would be likely to compete with each other and with domestic like products." 19 U.S.C. § 1675a(a)(7) (emphasis added). The language of the statute incorporates the competition consideration. Thus, under a reasonable interpretation of the statute, the ITC may consider the likely differing conditions of competition to predict the domestic market for the subject merchandise in event of revocation.

In a sunset review, the ITC must assess the impact of potential future imports when the volumes, prices, and even the existence of these imports may be unknown. As the ITC explained in its thorough 187-page report, the subject imports' recent volume, pricing, and market trends as well as the presence of U.S. affiliates indicate the extent to which certain industries would likely focus on the U.S. market in the absence of the duty orders. Second Sunset Determination at 114-17. The ITC has repeatedly examined competition considerations with "a bearing on the likely volume and price trends of subject imports if the orders under review are revoked." Sugar from the European Union, Inv. Nos. 104-TAA-7; AA 1921-198-200, 731-TA-3, USITC Pub. 3238 at 16 (Sept. 1999); see also Stainless Steel Bar from Brazil, India, Japan and Spain, Inv. Nos. 731-TA-678-679, 681-682, USITC Pub. 3404 at 13-14 (Mar. 2001). The ITC reasonably relied on these likely differing conditions of competition in prospectively analyzing the future likelihood of material injury.

The ITC reasonably considered the implication of cumulating subject imports when they exhibit significantly different volume and pricing trends. It also reasonably considered that certain imports may appear likely to compete in generally similar ways in the domestic market in the future, and thus assessed collectively the likely volumes,

prices, and impact of those like-competing imports on the domestic industry. Likewise, the ITC also reasonably considered that some imports may appear likely to compete in substantially different ways, and thus assessed those imports separately. The ITC's analysis responds to the potential for a combined injurious effect from the subject imports while reducing the risk that overbroad cumulation may unreasonably assign culpability to imports that are not likely to contribute to a continuation or recurrence of material injury.

Appellants argue that the ITC's competition consideration is at odds with the purpose of the cumulation provision, which, according to Appellants, is to capture the "hammering effects" of the subject imports. Hammering effects occur when unfairly traded imports cause simultaneous injury to the domestic industry even if they injure the domestic industry in different ways. Appellants assert that by refusing to cumulate all subject imports because of the likely differing conditions of competition, the ITC improperly obscured their hammering effects and thus ignored the statutory purpose behind the cumulation provision.

Appellants heavily rely on the legislative history of a <u>mandatory</u> cumulation provision to argue that capturing the hammering effects is the purpose of the <u>discretionary</u> cumulation provision at issue in this case. <u>Compare</u> 19 U.S.C. § 1677(7)(G) ("[The ITC] <u>shall</u> cumulatively assess the volume and effect of imports . . . from all [subject] countries . . . .") (emphasis added), <u>with</u> 19 U.S.C. § 1675a(a)(7) ("[The ITC] <u>may</u> cumulatively assess the volume and effect of imports of the subject merchandise from all countries . . . .") (emphasis added). Of course, at the outset, the difference between a mandatory provision and a discretionary provision is very

significant. The statutory language endows the Commission with discretion to determine cumulative impacts. The statutory language alone suggests that the Act does not intend the same application and the same justifications to apply in both mandatory and discretionary settings. Moreover, nothing in the legislative history suggests that the mandatory and discretionary cumulation provisions share the same, single rationale. Although capturing the hammering effects may reflect one rationale for the discretionary cumulation provision, it does not mandate that the ITC cumulate all subject imports even when all statutory elements are present. The ITC's competition analysis is not inconsistent with the statutory purposes of the discretionary cumulation provision.

V.

Because the ITC's consideration of the likely differing conditions of competition in deciding whether to cumulate the subject imports as part of the sunset review determination was a reasonable and permissible interpretation of the discretion conferred by § 1675a(a)(7), this court affirms the decision of the Court of International Trade.

AFFIRMED