Streetsurfing's "The Wave"

**DIAMOND SAWBLADES MANUFACTURERS' COALITION,** Plaintiff,

v.

**UNITED STATES DEPARTMENT OF COMMERCE and United States International Trade Commission,** Defendants.

Slip Op. 14–111.
Court No. 13–00391.

United States Court of International Trade.

Sept. 23, 2014.

As Amended Oct. 30, 2014.

Daniel B. Pickard and Maureen E. Thorson, Wiley Rein LLP, of Washington, D.C., argued for plaintiff.

Alexander V. Sverdlov, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, D.C., argued for defendant United States Department of Commerce. With him on the brief were Stuart F. Delery, Assistant Attorney General, Jeanne E. Davidson, Director, and Franklin E. White, Jr., Assistant Director. Of counsel on the brief was Nathaniel Halvorson, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, United States Department of Commerce, of Washington, D.C.

David B. Fishberg, Attorney–Advisor, Office of the General Counsel, United States International Trade Commission, of Washington, D.C., argued for defendant United States International Trade Commission. With him on the brief was Neal

J. Reynolds, Assistant General Counsel for Litigation.

### MEMORANDUM and ORDER

EATON, Senior Judge:

This action concerns the five-year, or "sunset," review of the antidumping duty order on diamond sawblades and parts thereof from the People's Republic of China ("PRC"), for which the United States Department of Commerce ("Commerce" or the "Department") published a notice in the Federal Register on December 2, 2013, and which was initiated on January 23, 2014. Initiation of Five–Year ("Sunset") Review, 78 Fed.Reg. 72,061 (Dep't of Commerce Dec. 2, 2013) ("Initiation Notice"); Diamond Sawblades and Parts Thereof From China Institution of a Five–Year Review, 78 Fed.Reg. 72,116, 72,117 (Int'l Trade Comm'n Dec. 2, 2013). The sole question posed by this case is whether the review was initiated at the proper time. Before the court is the motion[1] of plaintiff Diamond Sawblades Manufacturers' Coalition ("plaintiff" or the "Coalition"), seeking a ruling declaring that the ongoing review is *ultra vires*, halting that review, and instructing defendants to initiate a sunset review on November 4, 2014. Pl.'s Mot. (ECF Dkt. No. 30). Defendants,[2] the Department and the International Trade Commission ("ITC") (collectively, "defendants"), oppose the motion on the merits, and the Department has separately moved to dismiss the case for lack of subject matter jurisdiction. *See* Def.'s Resp. to Pl.'s Mot. for J. on the Administrative R. (ECF Dkt. No. 40) ("Dep't's Br."); Def. United States International Trade Commission's Resp. in Opp'n to Pl.'s Mot. for J. on the Administrative R. (ECF Dkt. No. 41); Def.'s Mot. to Dismiss Pl.'s Compl. for Lack of Jurisdiction (ECF Dkt. No. 46) ("Dep't's Mot. to Dismiss"). For the following reasons, the Department's motion to dismiss is denied and plaintiff's motion is granted.

### BACKGROUND

In 2005, the ITC initiated an injury investigation regarding certain diamond sawblades imported from the PRC and the Republic of Korea ("Korea").[3] *See Diamond Sawblades Mfrs. Coal. v. United States*, 626 F.3d 1374, 1376 (Fed.Cir.2010) ("*Diamond Sawblades V* "). The ITC preliminarily determined that there was a reasonable likelihood of injury to a United States industry as a result of the importation of subject merchandise, but then altered its position and found no material injury or threat of material injury in its final determination. *Id.* at 1376–77. For its part, the Department made preliminary and final determinations that diamond

---

1. While styled as a motion for judgment on the agency record, the court will treat plaintiff' smotion as one for summary judgment pursuant to USCIT Rule 56.

2. Although the International Trade Commission has submitted a brief agreeing with, and fully supporting, the arguments made by Commerce, because it makes no arguments of its own, the court will address only those

arguments made by the Department. See Def. United States International Trade Commission's Resp. in Opp'n to Pl.'s Mot. for J. on the Administrative R. (ECF Dkt. No. 41).

3. Korea is no longer covered by the antidumping duty order because the Department revoked it with respect to "diamond sawblades from Korea, pursuant to a proceeding under section 129 of the Uruguay Round

sawblades were being sold at less than fair value in the United States. *Id.* at 1376.

The Coalition brought an action in this Court, challenging the ITC's final negative material injury determination and Commerce's less than fair value determinations. *Id.* at 1377. The *Diamond Sawblades* Court remanded the case to the ITC, finding that its negative injury determination was insufficiently supported. *Diamond Sawblades Mfrs. Coal. v. United States,* 32 CIT 134, 135, 151 (2008) (*"Diamond Sawblades I "*). On remand, the ITC found a threat of material injury and the *Diamond Sawblades* Court affirmed that determination. *Diamond Sawblades Mfrs. Coal. v. United States,* 33 CIT 48, 48, 67 (2009) (*"Diamond Sawblades II "*).

After the issuance of *Diamond Sawblades II,* Commerce continued the suspension of liquidation of the subject imports of diamond sawblades, but took the position that it was not required to publish antidumping duty orders or direct the collection of cash deposits on ongoing imports of subject merchandise until the appeal of *Diamond Sawblades II* to the U.S. Court of Appeals for the Federal Circuit had been resolved. *Diamond Sawblades V,* 626 F.3d at 1377. Disputing this position, the Coalition petitioned the *Diamond Sawblades* Court for "a writ of mandamus directing Commerce to publish antidumping duty orders and immediately begin collecting cash deposits," and the *Dia-*

*mond Sawblades* Court granted the writ. *Id.; Diamond Sawblades Mfrs. Coal. v. United States,* 33 CIT 1422, 1452–53, 650 F.Supp.2d 1331, 1357 (2009) (*"Diamond Sawblades III "*).[4] Thereafter, on September 30, 2009, the *Diamond Sawblades* Court issued its judgment directing Commerce to forthwith "issue and publish antidumping duty orders and require the collection of cash deposits on subject merchandise." *Diamond Sawblades III,* 33 CIT at 1422, 1453, 650 F.Supp.2d at 1331, 1357.

On November 4, 2009, the Department published the antidumping duty order in the Federal Register. Diamond Sawblades and Parts Thereof From the PRC and Korea, 74 Fed.Reg. 57,145 (Dep't of Commerce Nov. 4, 2009) (antidumping duty orders) ("Antidumping Order"). Therein, the Department stated the effective date of the Antidumping Order as January 23, 2009 and further stated that it would direct U.S. Customs and Border Protection ("Customs") to collect cash deposits for unliquidated merchandise "as of" that date. Antidumping Order, 74 Fed. Reg. at 57,146. Thus, Commerce stated that it would direct the retroactive collection of cash deposits. *See* Antidumping Order, 74 Fed.Reg. at 57,146.

Following its publication, the Department conducted three administrative reviews[5] under 19 U.S.C. § 1675(a)(1)

---

Agreements Act to implement the findings of the World Trade Organization dispute settlement panel in [the] United States." Diamond Sawblades and Parts Thereof From Korea, 78 Fed.Reg. 36,524, 36,525 (Dep't of Commerce June 18, 2013) (final results of antidumping duty administrative review, 2010–2011) (citation omitted).

**4.** While the appeal in *Diamond Sawblades III* was pending, the Federal Circuit issued an opinion affirming *Diamond Sawblades II. Diamond Sawblades Mfrs. Coal. v. United States,* 612 F.3d 1348, 1362 (Fed.Cir.2010) (*"Diamond Sawblades IV "*). Thereafter, in *Diamond Sawblades V,* the Federal Circuit affirmed the issuance of the writ of mandamus and rejected the Department's position that it

was not required to publish the antidumping duty order until after all appeals relating to the order had been resolved. *Diamond Sawblades V,* 626 F.3d at 1382–83.

**5.** The period of review for the first administrative review of the Antidumping Order was January 23, 2009 through October 31, 2010. Diamond Sawblades and Parts Thereof From the PRC, 78 Fed.Reg. 11,143, 11,143 (Dep't of Commerce Feb. 15, 2013) (final results of antidumping duty administrative review). For the second administrative review of the Antidumping Order, the period of review was November 1, 2010 through October 31, 2011. Diamond Sawblades and Parts Thereof From the PRC, 78 Fed.Reg. 42,930, 42,931 (Dep't of Commerce July 18, 2013) (amended final re-

(2006), and used November 4, 2009 as the anniversary date of the Antidumping Order's publication. The reason for this choice was given in the notice for the first review. Therein, the Department stated that it chose the November 4 date rather than the January 23, 2009 effective date set out in the Antidumping Order because November was the anniversary for the publication of the Antidumping Order, and its regulations directed the use of that date. Thus, the Department stated:

> Although the effective date of the [Antidumping Order] is January 23, 2009, based on the date of the suspension of liquidation, the Department designates November as the anniversary month for the[ ] diamond sawblades order[ ] because this is the month in which the Department published the notice for the [Antidumping Order]. In its regulations, the Department defines the anniversary month as the calendar month in which the anniversary of the date of publication of an order ... occurs. Therefore, consistent with section 751(a)(1) of the Tariff Act of 1930 [ (19 U.S.C. § 1675(a)(1)) ], as amended, and [19 C.F.R. § 351.213(b) ], the first opportunity to request a review of the above-referenced order[ ] will be in November 2010.

Diamond Sawblades and Parts Thereof From the PRC and Korea, 75 Fed.Reg. 969, 970 (Dep't of Commerce Jan. 7, 2010) (notice of anniversary month and first opportunity to request an administrative review) (citation omitted). The November 4 date was also used in the succeeding administrative reviews. See, e.g., Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for

Revocation in Part, 78 Fed.Reg. 79,392, 79,392, 79,394 (Dep't of Commerce Dec. 30, 2013).

Although it consistently used November 4 for purposes of initiating administrative reviews, Commerce determined that it would use January 23, 2009 as the date to calculate the five-year period after which to conduct the sunset review, based on the stated effective date in the Antidumping Order. As a result, when the Department published the notice of initiation of the sunset review on December 2, 2013, it stated that the sunset review would be initiated on January 23, 2014. See Initiation Notice, 78 Fed.Reg. at 72,061; Diamond Sawblades and Parts Thereof From China Institution of a Five–Year Review, 78 Fed.Reg. at 72,117. Plaintiff, by its motion, now challenges defendants' decision to use January 23, 2009 as the anniversary date on which to begin conducting the sunset review, rather than November 4, 2009, the actual date of publication.

On July 11, 2014, during the pendency of this action, the Department published its portion of the sunset review that commenced on January 23, 2014, finding "that revocation of the antidumping duty order on diamond sawblades from the PRC would be likely to lead to continuation or recurrence of dumping at weighted-average margins up to 164.09 percent." Diamond Sawblades and Parts Thereof from the PRC, 79 Fed.Reg. 40,062, 40,063 (Dep't of Commerce July 11, 2014) (final results of the expedited sunset review of the antidumping duty order). At this time, the ITC's portion of the review has barely begun. Oral Arg. Tr. 29:23–25, Aug. 5, 2014 (ECF Dkt. No. 51) ("Oral Arg. Tr.").

---

sults of antidumping duty administrative review; 2010–2011). The period of review for the third administrative review was November 1, 2011 through October 31, 2012. Diamond Sawblades and Parts Thereof From the PRC, 79 Fed.Reg. 35,723, 35,723 (Dep't of Commerce June 24, 2014) (final results of antidumping duty administrative review; 2011–2012).

## DISCUSSION

### I. SUBJECT MATTER JURISDICTION AND MOTION TO DISMISS

The Department has separately moved to dismiss this action for lack of subject matter jurisdiction under the theory that plaintiff now has, and has always had, the ability to obtain complete relief by challenging the final determination once the sunset review is finished. Dep't's Mot. to Dismiss 5 ("[T]he Coalition may challenge the sunset review pursuant to 28 U.S.C. § 1581(c).").

Plaintiff initiated this action under 28 U.S.C. § 1581(i) (2006) and, following the publication of the Department's determination in its portion of the sunset review, on July 11, 2014, plaintiff brought another case under 28 U.S.C. § 1581(c), challenging that determination for the same reasons as those put forward in this case. Compl. ¶ 2 (ECF Dkt. No. 2); Summons, No. 14–00171 (2014), ECF Dkt. No. 1.

■ Under law developed by this Court and the Federal Circuit, "jurisdiction under subsection 1581(i) may not be invoked if jurisdiction under another subsection of section 1581 is or could have been available, unless the other subsection is shown to be manifestly inadequate." *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1292–93 (Fed.Cir.2008) (citing *Int'l Custom Prods., Inc. v. United States*, 467 F.3d 1324, 1327 (Fed.Cir.2006)). This Court has previously held that a determination requiring a party to participate in an unlawful unfair trade proceeding is reviewable during the pendency of the proceeding under 28 U.S.C. § 1581(i). *See Dofasco Inc. v. United States*, 28 CIT 263, 268, 326 F.Supp.2d 1340, 1345 (2004) ("[F]orcing Dofasco to wait until a final

determination has been issued before it may challenge the lawfulness of the administrative review, would mean that Dofasco's opportunity for full relief—i.e., freedom from participation in the administrative review—would be lost." (citations omitted)); *see also Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 38 CIT ——, ——, 986 F.Supp.2d 1381, 1388–89 (2014) (recognizing a line of cases in which plaintiffs "sought to stop an allegedly unnecessary or ultra vires administrative proceeding before [they] were burdened with" it and in which jurisdiction under 19 U.S.C. § 1581(i) was confirmed by this Court); *Diamond Sawblades Mfrs.'Coal. v. U.S. Dep't of Commerce*, 38 CIT ——, ——, 968 F.Supp.2d 1338, 1342 (2014), *appeal dismissed*, 560 Fed.Appx. 998 (Fed.Cir.2014). In other words, this Court has found that, when faced with an unlawfully commenced review, waiting for the final determination of the review to challenge its unlawful commencement is "manifestly inadequate," and jurisdiction under section 1581(i) is available.

■ Despite Commerce's arguments to the contrary, relief under section 1581(i) is still available to plaintiff. As the parties each acknowledged at oral argument, although the Department has completed its part of the sunset review, the ITC's portion of the sunset review is in its nascent stage. Oral Arg. Tr. 29:23–25. Indeed, that process, which counsel for the ITC recognized can be onerous for interested parties, has not entered its most burdensome period. Oral Arg. Tr. 29:23–30:5. Thus, plaintiff still seeks a remedy that 28 U.S.C. § 1581(c) cannot provide, namely being excused from further participation in an ongoing *ultra vires* proceeding.[6] Ac-

---

6. Defendants insist that cases in this Court have held that, where the question is the "timing" of the commencement of agency ac-
tion, jurisdiction under section 1581(i) is unavailable. Department of Commerce's Reply in Supp. of its Mot. to Dismiss Pl.'s Compl.

cordingly, the court continues to have jurisdiction under 19 U.S.C. § 1581(i) and the Department's motion to dismiss is denied.

## II. THE SUNSET REVIEW WAS UNTIMELY COMMENCED

Plaintiff maintains that defendants have acted beyond the scope of their authority by seeking to conduct a sunset review of the Antidumping Order prior to the five-year anniversary of November 4, 2009, the date of publication of the order in the Federal Register. Pl. Diamond Sawblades Manufacturers' Coalition's Mem. in Supp. of its Mot. 27 (ECF Dkt. No. 30) ("Pl.'s Br."). For plaintiff, November 4, 2009, the actual date of publication of the Antidumping Order in the Federal Register, is the date of publication for purposes of 19 U.S.C. § 1675(c)(1). Pl.'s Br. 12. There is no dispute that the actual publication date of the Antidumping Order was November 4, 2009. Pl.'s Br. 12; Dep't's Br. 4. Therefore, plaintiff insists that the plain language of the statute requires the Department to wait until November 4, 2014 to commence the sunset review. Pl.'s Br. 12. For plaintiff, the early commencement is *ultra vires*, and accordingly, the court should direct that the sunset review be halted. Pl.'s Br. 27.

In the Antidumping Order itself, the Department's sole reason given for choosing the effective date of January 23, 2009 was that, "because suspension of liquidation [7] is already in effect for all entries of diamond sawblades from the PRC ... entered, or withdrawn from the warehouse, for consumption on or after January 23, 2009, the effective date of the[ ] antidumping duty order[ ] ... is January 23, 2009." Antidumping Order, 74 Fed. Reg. at 57,146. It is worth noting that the Department understood that no court directed the use of the January 23, 2009 date. *See* Antidumping Order, 74 Fed. Reg. at 57,146 ("The CIT's order of September 30, 2009, did not address the effective date of any potential antidumping duty orders . . . ."). Nor, for that matter, did plaintiff seek this earlier effective date. Rather, defendants determined, on their own, to use the earlier date and now apparently claim that Commerce was acting within its authority to determine an effective date of January 23, 2009. *See* Dep't's Mot. to Dismiss 5–6. The court finds defendants' position to be untenable and that the sunset review was untimely commenced. Thus, plaintiff's motion is granted.

### A. Legal Framework

Under 19 U.S.C. § 1675(c)(1), the Department "and the ITC must review antidumping and countervailing duty orders every five years." *Nucor Corp. v. United*

for Lack of Jurisdiction 3–4 (ECF Dkt. No. 55) (citing *Tianjin Magnesium Int'l Co. v. United States*, 32 CIT 1, 533 F.Supp.2d 1327 (2008); *Tokyo Kikai Seisakusho, Ltd. v. United States*, 29 CIT 1280, 403 F.Supp.2d 1287 (2005)). Those cases are distinguishable from the facts presented here, because, in those cases, commencement of the proceeding was clearly left to the discretion of Commerce. Here, defendants' actions are clearly beyond their discretion and are *ultra vires*. In other words, the cases stand for the proposition that jurisdiction can be controlled by the facts. In addition, the *Tokyo* Court found that participation in the early stage of the review would not be burdensome, a far different set of facts than present here. *See Tokyo*, 29 CIT at 1287, 403 F.Supp.2d at 1294.

7. Liquidation is "the 'final computation or ascertainment of duties ... accruing upon entry' of the goods." *Norsk Hydro Canada, Inc. v. United States*, 472 F.3d 1347, 1351 (Fed.Cir.2006) (alteration in original) (quoting 19 C.F.R. § 159.1) (citing 19 U.S.C. § 1500(d)). Here, liquidation was suspended January 23, 2009.

*States,* 601 F.3d 1291 (Fed.Cir.2010) (citing 19 U.S.C. § 1675(c)(1) (2006)); *see also* 19 C.F.R. § 351.102(b)(49) (2012) (defining the term "sunset review" to mean a review under 19 U.S.C. § 1675(c)). Pursuant to 19 U.S.C. § 1675(c)(1),

> 5 years after *the date of publication* of ... an antidumping duty order ... the administering authority and the Commission shall conduct a review to determine ... whether revocation of the ... antidumping duty order ... would be likely to lead to continuation or recurrence of dumping ... and of material injury.

19 U.S.C. § 1675(c)(1) (emphasis added) (footnote omitted). Thus, in accordance with the statute, five years "after the date of publication of" the *Diamond Sawblades* Antidumping Order, the Department and the ITC are required to conduct a sunset review to determine whether or not the Antidumping Order should be revoked. Additionally, under the Department's regulations, a notice of initiation of a sunset review of an antidumping duty order must be published "[n]o later than 30 days before the fifth anniversary date of an order...." 19 C.F.R. § 351.218(c)(1) (2012).

## B. Plaintiff's Motion Is Granted

The court grants plaintiff's motion for several reasons, namely because (1) the plain language of the statute explicitly directs Commerce to begin a sunset review "5 years after the date of publication of ... an antidumping duty order" in the Federal Register, (2) the use of the November 4, 2009 date is consistent with the Department's application of the phrase "date of publication" in other parts of the same statute, (3) use of the January 23 date is inconsistent with Commerce's interpretation of the phrase "date of publication" when commencing administrative reviews of the Antidumping Order, (4) defendants' use of the January 23 date does not comport with the unfair trade laws' statutory scheme, and (5) defendants' theory of notice by "constructive publication" is without merit. 19 U.S.C. § 1675(c)(1) (footnote omitted).

### 1. The Plain Language of the Statute

■ The plain language of 19 U.S.C. § 1675(c)(1) requires the Department to commence the sunset review of an antidumping duty order five years after the date of publication of the order in the Federal Register. *See* 19 U.S.C. § 1675(c)(1). Although the term "date of publication" is not defined in the statute, plaintiff is correct that the "phrase is no term of art" and that the general understanding of the term "is not an ambiguous definition[. P]ublication of an antidumping duty order occurs when such an order is communicated to the public, whether in printed form or otherwise." Pl.'s Br. 10. Indeed, defendants concede as much. *See* Dep't's Br. 5.DB1

The word publication is understood by English speakers to mean "[t]he act or process of publishing printed matter." *See* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1416 (4th ed. 2000). Legal sources do not indicate a contrary meaning. *See, e.g.,* BLACK'S LAW DICTIO-

NARY 1423 (10th ed. 2014) (defining the term "publication" as "[g]enerally, the act of declaring or announcing to the public"). The language of the statute is, thus, a clear and unambiguous directive to the Department.

■ Indeed, the Department's sunset review regulations do not contain a definition of "date of publication," indicating that Commerce understands the statutory directive to be clear. Moreover, Commerce makes no claim for deference under *Chevron*. *See* Dep't's Br.; Dep't's Mot. to Dismiss. "The so-called *Chevron* line of cases provides guidance to Courts when a statute is silent or ambiguous." *Beijing Tianhai Indus. v. United States*, 38 CIT ——, ——, Slip Op. 14–104, at 7 (2014) (citing *Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). "[A]gencies are entitled to formulate policy and make rules 'to fill any gap left, implicitly or explicitly, by Congress.'" *SKF USA Inc. v. United States*, 254 F.3d 1022, 1030 (Fed.Cir.2001) (quoting *Chevron*, 467 U.S. at 843, 104 S.Ct. 2778). Here, because there is no gap to be filled, the Department has not sought, and is not entitled to, deference under *Chevron*. That is, section 1675(c)'s command to conduct a sunset review "5 years after the date of publication of … an antidumping duty order" is not ambiguous. 19 U.S.C. § 1675(c)(1) (footnote omitted). Therefore, the use of any date other than November 4, 2009 as the "date of publication" conflicts with the plain meaning of the statute and, thus, fails as a matter of law. *See* ROBERT A. KATZMANN, JUDGING STATUTES 50 (2014) (noting that, under the canons of statutory construction, "if the language is plain, construction is unnecessary").

### 2. Consistent Use Within the Same Statute

■ Next, the use of November 4, 2009 is in keeping with how the Department has interpreted the phrase "date of publication" in other parts of the statute. In particular, 19 U.S.C. § 1675(a)(1) allows administrative reviews of antidumping duty orders to be conducted "[a]t least once during each 12–month period beginning on the anniversary of the date of publication of … an antidumping duty order." 19 U.S.C. § 1675(a)(1). As the Department acknowledges, it has consistently treated the "date of publication" of antidumping duty orders as the same date for administrative reviews and sunset reviews. Dep't's Br. 12. Indeed, to accept any other result would be to adopt inconsistent definitions of the same term, not only within the same statute, but within the same section of the statute. Thus, the Department's use of January 23, 2009 as the "effective date" of publication would violate the rule of statutory construction that "[t]he same words used twice in the same act are presumed to have the same meaning." NORMAN J. SINGER & J.D. SHAMBIE SINGER, STATUTES AND STATUTORY CONSTRUCTION § 46:6, at 249 (7th ed. 2007); *see also Gustafson v. Alloyd Co.*, 513 U.S. 561, 568, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) (citations omitted) ("[T]he term should be construed, if possible, to give it a consistent meaning throughout the Act. That principle follows from our duty to construe statutes, not isolated provisions.").

### 3. Consistent Use Under the Antidumping Order

■ The court also finds that using the January 23 date for purposes of initiating

minations it has made pertaining to administrative reviews under the Antidumping Order itself. Again, pursuant to 19 U.S.C. § 1675(a)(1), "[a]t least once during each 12-month period beginning on the anniversary of the date of publication" of an order, the Department, upon request, shall conduct an administrative review. 19 U.S.C. § 1675(a)(1). As has been noted, for each of the administrative reviews conducted under the Antidumping Order, Commerce has used November 4 as the anniversary date of the "date of publication." *See, e.g.,* Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part, 78 Fed.Reg. at 79,392, 79,394 (identifying the Antidumping Order as having a November anniversary date); Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review, 78 Fed.Reg. 65,-612, 65,613 (Dep't of Commerce Nov. 1, 2013) (noting that the anniversary month for which interested parties can request an administrative review of the Antidumping Order is the month of November). To use the January 23, 2009 date as the date of publication for sunset review purposes would thus be inconsistent with all other "date of publication" determinations made under the Antidumping Order and would thus violate the Department's past practice.

### 4. Statutory Scheme

■ In addition, although Commerce and the ITC argue that their use of the January 23 date is consistent with the the sunset review would be inconsistent with how the Department has interpreted "date of publication" with respect to deter statu-

tory scheme, this is decidedly not the case. Dep't's Br. 9. In making their argument, defendants rely on the notion that plaintiff has had the protection of the antidumping laws from January 23, 2009 because the liquidation of entries of diamond sawblades was continued from that date and because cash deposits were retroactively imposed from that date when the Antidumping Order was published on November 4, 2009.

The protections offered by the order—including cash deposit rates—have covered that period. Waiting until November 2014 to conduct the sunset review would keep the order in place for five years and nine months—far beyond the contemplated five-year mark. Under the statutory scheme described by the [Statement of Administrative Action], Commerce's regulations, and the Federal Circuit's decisions, such a result would be unreasonable.

Dep't's Br. 11. It is worth noting, however, that there is no record evidence that any, let alone all, of the cash deposits were actually retroactively collected. Diamond Sawblades and Parts Thereof from the PRC, 70 Fed.Reg. 77,121, 77,121, 77,134 (Dep't of Commerce Dec. 29, 2005) (preliminary determination of sales at less than fair value, postponement of final determination, and preliminary partial determination of critical circumstances). Thus, there is little to indicate that the domestic producers benefitted from any of the claimed protections.

In addition, as plaintiff points out, 19 U.S.C. § 1673e(a) mandates that an antidumping duty order contain, among other things, a directive that "requires the deposit of estimated antidumping duties pending liquidation of entries of merchan-

dise *at the same time as estimated normal customs duties on that merchandise are deposited.*" 19 U.S.C. § 1673e(a)(3) (2006) (emphasis added); Pl.'s Br. 9. Here, for the entries made between January 23, 2014 and November 4, 2014, no antidumping cash deposits were required at the time of entry. Rather, only normal customs duties were imposed. The Department did not order the retroactive collection of cash deposits until the publication of the Antidumping Order in the Federal Register on November 4, 2009. Antidumping Order, 74 Fed.Reg. at 57,145, 57,146. Thus, defendants' proposed use of January 23, 2009 as the anniversary date does not comport with the statutory scheme for collection of cash deposits (and the protection afforded the industry thereby) because they were not collected at the time that normal duties were collected.

More importantly, in making its "statutory scheme" argument, defendants point only to the protections provided to domestic producers by the unfair trade laws. Dep't's Br. 7–11. Although an antidumping duty order protects domestic producers by imposing duties and providing for the collection of cash deposits, the portion of the statutory scheme providing for sunset reviews fulfills a different intention. The purpose of a sunset review is to deter-

mine if the imposition of an antidumping duty order has had the effect of causing those covered by the order to mend their ways, i.e., to discover if they have stopped dumping. Thus, publication of the Antidumping Order put producers and exporters of diamond sawblades on notice that (1) the order was in place, (2) administrative reviews could be requested in the future, and (3) if the Antidumping Order survived, a sunset review would be commenced. This notice, however, was only given to those interested on November 4, 2009.

■ With respect to sunset reviews, in accordance with our treaty arrangements,[8] Congress chose a five-year period as the time-frame to be examined. Uruguay Round Agreements Act, Statement of Administrative Action, H.R.REP. No. 103–316, vol. 6, at 879 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4205. As with administrative reviews, in a sunset review, Commerce looks backward[9] to see what the behavior of the producers and exporters has been during a preceding time period. Therefore, in a sunset review, Commerce looks five years back to determine whether the dumping and injury to the domestic industry have subsided in the years following the imposition of the order.

---

**8.** The Uruguay Record Agreements Act revised the Tariff Act of 1930 by requiring that antidumping and countervailing duty orders be reviewed every five years. Uruguay Round Agreements Act, Statement of Administrative Action, H.R.REP. No. 103–316, vol. 6, at 879 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4205.

**9.** The antidumping statutory scheme is "inherently retroactive." *SKF USA, Inc. v. Unit-*

*ed States,* 537 F.3d 1373, 1381 (Fed.Cir.2008). Thus, the statute " 'expressly calls for the retrospective application of antidumping review determinations.' " *SeAH Steel Corp. v. United States,* 34 CIT ——, ——, 704 F.Supp.2d 1353, 1362 (2010) (quoting *Am. Permac, Inc. v. United States,* 10 CIT 535, 539, 642 F.Supp. 1187, 1191 (1986)).

In determining whether revocation of an order ... would likely lead to continuation or recurrence of dumping, the Department considers the margins established in the investigation and/or reviews conducted during the sunset review period, as well as the volume of imports for the periods before and after issuance of the order (or acceptance of the suspension agreement).

ENFORCEMENT & COMPLIANCE ANTIDUMPING MANUAL Ch. 25, at 7 (Oct. 13, 2009) (footnote omitted). Thus, defendants' assertion that the "effective date performs all the legal functions normally associated with publication" is not correct because it ignores the notice function of publication. Dep't's Br. 5–6.

Were the court to adopt defendants' use of the January 23, 2009 effective date of the Antidumping Order, the period of useful examination for the now underway sunset review would be shortened to four years and three months. This is because no one was put on notice that the Antidumping Order was in place on January 23, 2009, nor were cash deposits being collected following that date. While defendants rely on the idea that domestic producers gained the protection of the Antidumping Order from January 23, 2009, they ignore the purpose of the Antidumping Order to give notice to foreign producers and exporters (and, more importantly, the importers who actually pay the duties) that it was in effect. Thus, between January 23, 2009 and November 4, 2009, diamond sawblades were entering the United States with the producers and exporters believing that no order was in place and without the burden of cash deposits. Therefore, no producer or exporter was put on notice that its behavior in the five years succeeding January 23, 2009 would be examined to determine whether the Antidumping Order should continue. Because no one was put on notice of the existence of the Antidumping Order until November 4, 2009, defendants' claim that the statutory scheme confirms the use of the January 23 date is unconvincing because it does not take into account either the notice function of publication or the purpose of sunset reviews.

### 5. Constructive Notice by Publication

Finally, a word is needed on defendants' theory of notice by "constructive publication." According to Commerce and the ITC, notice of the Antidumping Order was "effectively" given on January 23, 2009 because it was "constructively published" on that date. Dep't's Br. 6. They base this claim on their argument that the retroactive collection of antidumping duties fully protected the domestic industry. Dep't's Br. 6 ("Here, however, the order was made retroactively operative, and its protections were made to extend back *before* its *Federal Register* date."). For defendants, this "constructive publication" necessarily provided constructive notice.

■■■ Constructive notice by publication is a legal fiction that presumes that persons have read something that they may have never seen. Thus, "[w]hen a court says that the defendant received 'constructive notice[,]' ... it means that he didn't receive notice but we'll pretend he did." *Torry v. Northrop Grumman Corp.*, 399 F.3d 876, 878 (7th Cir.2005). While constructive notice by publication has its place, the sole case relied on by defendants, for the proposition that the publication on November 4, 2009 somehow provided constructive notice that the Antidumping Order was in effect as of January 23, 2009, does not support their argument. *See* Dep't's Br. 6 (citing *Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*, 27 CIT 1541, 1549 n. 10, 285 F.Supp.2d 1371, 1378 n. 10 (2003) (citations omitted)). The *Cathedral Candle* Court found that publi-

cation in the Federal Register of a notice stating that the ITC was preparing a list of those "potentially eligible" to receive "Byrd"[10] funds resulted in constructive notice to interested parties of the "existence of the list." *Cathedral Candle*, 27 CIT at 1549 n. 10, 1550, 285 F.Supp.2d at 1378 n. 10, 1379 ("It is well established by both statutes and cases that publication of an item in the Federal Register constitutes constructive notice of anything within that item. Plaintiffs were on constructive notice of the existence of the list and Customs' request that questions be directed to the ITC *from the time of publication* onward." (emphasis added) (citations omitted)). Nothing in the case indicates that publication can constitute constructive notice effective on a date prior to actual publication. Rather, it holds that constructive notice is effective "from the time of publication onward." *Id.* at 1549 n. 10, 285 F.Supp.2d at 1378 n. 10. In other words, the interested parties were put on notice of the existence of the list from the date of publication forward, whether they actually saw the published notice or not, but were not charged with knowledge prior to the date of publication.

 The Department and the ITC assert that, on January 23, 2009, the public was somehow put on notice of the Antidumping Order even though it first appeared in the Federal Register over nine months later. Defendants' claim of constructive notice by publication, of course, completely changes that concept. Constructive notice, rather than actual notice, can occur when, for instance, persons are served with process by publication. Then, although those served may never see the notice that the law affords, notice is pre-

sumed and service is good from the date of publication forward. Here, defendants would change the rule so that *failure* to publish would notify those interested that the Antidumping Order was in place. Defendants cite no law and make no compelling argument to support their notice by "constructive publication" claim. Because no one was put on notice either constructively or actually of the existence of the Antidumping Order until November 4, 2009, this argument fails.

## CONCLUSION and ORDER

As the Department points out, it is unlikely that the facts present here will be repeated. *See* Oral Arg. Tr. 16:1–9. If true, then no practice or precedent will be established by this case. Therefore, the time for correcting this one-time mistake has come.

For the foregoing reasons, the Department's motion to dismiss is denied, plaintiff's motion is granted.

Defendants are hereby

ORDERED to rescind the Final Results published by Commerce on July 11, 2014; it is further

ORDERED that defendants cease further activity with respect to the sunset review initiated on January 23, 2014; and it is further

ORDERED that defendants initiate the sunset review of the Antidumping Order on November 4, 2014.

---

**10.** Pursuant to the continued Dumping and Subsidy Offset Act of 2000, codified at 19 U.S.C. § 1675c (2000) ("Byrd Amendment"), certain "affected domestic producers" were entitled to distributions of antidumping and countervailing duties collected by the United States.